**Delton HUST and Holly Hust,
Plaintiffs and Appellants,**

**v.**

**NORTHERN LOG, INC., a Minnesota
Corporation, Defendant and Appellee.**

**Civ. No. 9792.**

Supreme Court of North Dakota.

Oct. 6, 1980.

Mackenzie & Jungroth, Jamestown, for plaintiffs and appellants; argued by James A. Reisnour, Jamestown.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for defendant and appellee; argued by A. William Lucas, Bismarck.

PAULSON, Justice.

Delton and Holly Hust, the plaintiffs and appellants, appeal from a judgment ren-

dered by the Stutsman County District Court which denied the Husts' motion to strike an allegation in the answer of Northern Log, Inc., the defendant and appellee, and granted Northern Log's motion to dismiss for lack of jurisdiction over the person. We affirm the judgment of the district court.

The Husts viewed a log home in Minnesota constructed from Northern Log's materials in 1975. They wrote to the corporation's headquarters in Remer, Minnesota, and requested information concerning log homes. In response to the Husts' inquiry, Northern Log sent a brochure to them which explained the history of the corporation and the procedure used to purchase logs from the corporation. The Husts then traveled to Remer, Minnesota, and viewed buildings constructed from the corporation's materials. After the Husts deposited $200.00 for the purchase of logs, Northern Log sent them a purchase contract and floor plans. The Husts signed the contract and returned it to Northern Log. The parties disagree as to where the contract was accepted and as to where the sale of the logs occurred.

In July of 1976 the Husts transported the logs from Remer, Minnesota, to Jamestown. At the time that they took delivery of the logs, the Husts paid the balance of the purchase price. Northern Log represented in its brochure that it would provide on–site construction aid and an agent of Northern Log did assist in the construction of the Husts' home for a two–day period. Because of the uneven notching in the logs, the corners of the log home being constructed were uneven and Northern Log shipped replacement logs into North Dakota. Northern Log's agent assisted in replacing the faulty logs and compensated the carpenter hired by the Husts for the extra work that had been done on the home.

In the fall of 1976, large cracks developed in the replacement logs used and water leaked through such cracks and into the Husts' home. Although Northern Log inspected the home and discussed the problem with the Husts, the relationship between the parties deteriorated and the Husts filed suit. In their amended complaint, the Husts alleged that Northern Log had breached its implied warranty of fitness for a particular purpose, as well as its express warranties on the building materials. The Husts also alleged that Northern Log sold a pre--cut log package in a defective condition unreasonably dangerous to the Husts and their property.

The Husts alleged that the district court had personal jurisdiction over Northern Log by virtue of contacts with the State which met the requirements of Rule 4(b)(2)(A), (B), and (C) of the North Dakota Rules of Civil Procedure. Northern Log, in its answer, specifically denied the allegation that the district court had personal jurisdiction and alleged that the defects in the replacement logs as well as the damages sustained by the Husts were the result of improper handling and erection of the building materials by the Husts. Pursuant to Rule 12(f), N.D.R.Civ.P., the Husts made a motion to strike the allegation contained in Northern Log's answer. Northern Log resisted the motion to strike and presented a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), N.D.R.Civ.P. The district court denied the Husts' motion to strike the allegation of lack of personal jurisdiction and granted Northern Log's motion to dismiss for lack of jurisdiction, without prejudice. The Husts appeal from the judgment of the district court.

The sole issue presented for our determination on appeal is whether or not the trial court erred in ruling that Northern Log is not subject to personal jurisdiction under Rule 4(b)(2), N.D.R.Civ.P. Rule 4(b)(2) and subparagraphs (A), (B), and (C) thereof, N.D.R.Civ.P., which the Husts contend are applicable to the instant case, are set out below:

"RULE 4 ·PERSONS SUBJECT TO JURISDICTION–PROCESS–SERVICE

.    .    .    .    .

"(b) Jurisdiction of person.

.    .    .    .    .

*"(2) Personal jurisdiction based upon contacts.* A court of this state may exercise personal jurisdiction over a person who acts directly or by an agent as to any claim for relief arising from the person's having such contact with this state that the exercise of personal jurisdiction over him does not offend against traditional notions of justice or fair play or the due process of law, under one or more of the following circumstances:

"(A) transacting any business in this state;

"(B) contracting to supply or supplying service, goods, or other things in this state; [and]

"(C) committing a tort within or without this state causing injury to another person or property within this state; . . ."

Rule 4(b)(2), N.D.R.Civ.P., is an attempt to codify the principle announced by the United States Supreme Court in *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), where the Supreme Court held "that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' ". The Supreme Court has examined the *International Shoe* "minimum contacts" principle in several factual situations. *See McGee v. International Life Insurance Company,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Ohio v. Wyandotte Chemicals Corp.,* 401 U.S. 493, 91 S.Ct. 1005, 28 L.Ed.2d 256, 57 Ohio Ops.2d 351 (1971); *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Rush v.*

*Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).

The history of North Dakota's "long–arm" provisions is recited in *Hebron Brick Co. v. Robinson Brick & Tile Co.,* 234 N.W.2d 250 (N.D.1975), and we will not reiterate the history surrounding the development of such provisions. In *Hebron Brick, supra,* we defined the scope of Rule 4, N.D.R.Civ.P., to encompass the exercise of personal jurisdiction by the state courts to the fullest extent permitted by due process. We also stated that each question of personal jurisdiction must be decided on a case–by–case basis depending upon the particular facts and circumstances of each case.

The determination that must be made in resolving the question of personal jurisdiction is two fold.[1] First, it must be determined if the requirements of the applicable subparagraphs contained in Rule 4(b)(2), N.D.R.Civ.P., have been satisfied. Secondly, it is necessary to determine whether or not the nonresident party has had such contact with the forum State that the exercise of personal jurisdiction over the nonresident does not offend against the traditional notions of justice and fair play under the concept of due process of law. We now examine Northern Log's contacts with the Husts in North Dakota.

The Husts allege that Northern Log sent an advertising brochure into North Dakota in response to the Husts' inquiries concerning the purchase of logs. It is also alleged that Northern Log utilized North Dakota banking systems when it cashed the checks given by the Husts for the purchase of the logs. Northern Log contacted the Husts in North Dakota by telephone on several occasions and sent its agent into North Dakota for the purpose of rendering on–site construction aid. The Husts also allege that Northern Log committed a tort in North Dakota, breached implied and express warranties, and supplied a service under a contract accepted in North Dakota.

---

1. The 1979 amendment to Rule 4(b)(2), N.D.R. Civ.P., added the following language: "having such contact with this state that the exercise of personal jurisdiction over him does not offend against traditional notions of justice or fair play or the due process of law, under one or more of the following circumstances:".

Northern Log contends that it is a corporation organized and existing under the laws of Minnesota and that it has not applied for a certificate of authority to transact business in North Dakota. Northern Log also contends that it has no agents or employees in North Dakota, nor does it advertise its products in North Dakota. Finally, Northern Log contends that the contract was accepted and the sale of the logs occurred in Remer, Minnesota.

Unfortunately, the contract between the Husts and Northern Log, as well as the brochure sent by Northern Log to the Husts, are not in evidence and therefore are not available for examination. Thus, we cannot determine where the purchase contract was finally accepted. In *Lumber Mart, Inc. v. Haas International Sales and Service*, 269 N.W.2d 83 (N.D.1978), we held that the nonresident party must have minimal contacts in the forum State which are directly related to the cause of action involved in the case in order to allow the forum State to acquire personal jurisdiction over the nonresident party. This rule applies unless the contacts in the forum State are of such scope, nature, and sufficiency as to confer general jurisdiction upon the forum State. In *Lumber Mart, supra*, we noted that granting jurisdiction to North Dakota courts based upon the facts present in that case would be tantamount to penalizing the nonresident party for attempting to settle a dispute. Similarly, we cannot include within the contacts subject to examination for the minimum–contacts analysis those contacts by Northern Log with North Dakota which resulted from the attempt to furnish replacement logs to the Husts.

In *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court held that an Oklahoma trial court could not exercise *in personam* jurisdiction over a New York automobile retailer and wholesale distributor. The plaintiffs and respondents had purchased a new car in New York and used that car to travel to Arizona. As they drove through Oklahoma, another car struck the respondents' car and caused severe injuries to the respondents. The respondents brought suit in an Oklahoma district court and alleged that their injuries resulted from the defective design and placement of the car's gas tank and fuel system. The petitioners sought a writ of prohibition from the Supreme Court of Oklahoma and alleged that they had no minimal contacts with the State of Oklahoma. The Oklahoma Supreme Court denied the writ and based its decision on the argument that the petitioners could have foreseen that the car would be used in Oklahoma.

The Supreme Court reversed the decision of the Oklahoma Supreme Court and listed several facts which were dispositive of the issue of minimum contacts for jurisdictional purposes. In *World--Wide Volkswagen, supra* 444 U.S. at 295, 100 S.Ct. at 566, 62 L.Ed.2d at 500, the United States Supreme Court stated:

" . . . we find in the record before us a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state -court jurisdiction. Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market. In short, respondents seek to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma."

Some of the facts viewed as important by the United States Supreme Court in *World–Wide Volkswagen, supra*, are also present in this case: Northern Log closes no sales in

North Dakota; the Husts submitted all payments to Northern Log in Remer, Minnesota; the Husts transported the original set of logs to North Dakota; Northern Log solicits no business in North Dakota through salespersons or through advertising reasonably calculated to reach the State; Northern Log sent the brochure displaying its products after the Husts inquired about building a log home; Northern Log sent its agent for the sole purpose of overseeing the construction of the home in its initial stages; Northern Log does not directly serve the North Dakota market. Thus, Northern Log's contacts with North Dakota can be equated to the "fortuitous circumstance" alluded to by the United States Supreme Court in *World–Wide Volkswagen, supra.*

We do not find it necessary to determine if the conditions of the applicable subparagraphs of Rule 4(b)(2) have been satisfied.[2] We are satisfied that Northern Log cannot be made subject to the exercise of personal jurisdiction for the reason that exercising personal jurisdiction would offend against the traditional notions of justice and fair play under due process. The activities of Northern Log were not those of a corporation which "purposefully avails itself of the privilege of conducting activities within the forum State". *Hanson v. Denckla, supra* 357 U.S. at 253, 78 S.Ct. at 1239. While it may have been foreseeable that Northern Log's products could be used in North Dakota, the United States Supreme Court discounted the foreseeability test in *World Wide Volkswagen, supra* 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501:

> "This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."

2. Generally, we first determine if the facts satisfy the requirements of Rule 4(b)(2), but in this instance, because the constitutional re-

The minimum–contacts principle lends a degree of predictability to the legal system in order to assist potential defendants in structuring their conduct with some degree of assurance that some conduct will not render them liable to suit. The principle also acts to ensure that the States do not reach beyond the limits imposed on them by their status as coequal sovereigns in a federal system. For reasons set forth in the opinion, we affirm the judgment of the district court.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.

quirements cannot be met, it serves no purpose to do so.