2004 ND 56

**Gene ENSIGN, Plaintiff and Appellee,**

v.

**The BANK OF BAKER, Defendant and Appellant.**

**No. 20030234.**

Supreme Court of North Dakota.

March 23, 2004.

Michael J. Maus, Hardy, Maus & Nordsven, Dickinson, N.D., for plaintiff and appellee.

Garth H. Sjue (argued) and Ken G. Hedge (on brief), Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P., Williston, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1]   The Bank of Baker appealed from a summary judgment holding Gene Ensign's agricultural supplier's lien on a bankrupt Montana couple's buffalo proceeds is superior to the Bank's prior perfected security interest in those proceeds and ordering the Bank to pay Ensign $88,857.59 plus costs.  Because the district

court had no personal jurisdiction over the Bank, we vacate the judgment.

## I

[¶ 2] The Bank is a Montana corporation with its principal place of business at Baker, Montana. It has no banks located in North Dakota. The Bank does not solicit customers in North Dakota, but occasionally loans money to customers who live in North Dakota. Loans made to North Dakota customers are originated in Montana.

[¶ 3] In August 1996 the Bank loaned money to Leonard Lewis and Donna Lewis, a married couple who resided in Montana and raised buffalo for slaughter on their ranch in Carter County, Montana. The Lewises secured the loan, in part, with buffalo. The Lewises borrowed additional money from the Bank in later years, and in May 1999 they executed a security agreement granting the Bank a security interest in all buffalo and "products and proceeds thereof" and "all machinery and equipment now owned or hereafter acquired." The Bank perfected the security interest by filing a financing statement with the Montana Secretary of State.

[¶ 4] Ensign is not a customer of the Bank, but is a farmer and rancher who operates a custom buffalo-feeding business near Scranton, North Dakota. The Lewises entered into two contracts with Ensign to feed their buffalo. During 2000 and 2001, the Lewises delivered more than 200 buffalo to Ensign's feedlot in Bowman County. Upon receiving the buffalo, Ensign filed with the Bowman County Recorder two agricultural supplier's liens covering the buffalo. The Bank then filed an additional financing statement with the North Dakota Secretary of State. On two occasions, the Bank sent an employee to Ensign's North Dakota feedlot to inspect its buffalo collateral. The Lewises eventually defaulted on their loans from the Bank.

[¶ 5] After some of the buffalo had already been sold, the Lewises, in January 2002, sold forty-three buffalo for $19,019.33. The check was made payable to the Bank, Lee Lewis, Ensign, and the Farm Service Agency ("FSA"). In July 2002, forty buffalo were sold for $18,480. The check was again made payable to the Bank, Lee Lewis, Ensign, and the FSA. The January 2002 check is in the Bank's possession, and the June 2002 check is in Ensign's possession.

[¶ 6] Ensign brought this action against the Bank in North Dakota state district court to determine the priority to the January 2002 check held by the Bank in Montana and to obtain a money judgment against the Bank for the face amount of the check. The Bank moved to dismiss the complaint, arguing the court did not have personal jurisdiction over the Bank and did not have subject-matter jurisdiction over the check, because the check was in its possession in Montana. In June 2002, the Lewises filed for bankruptcy. After the Bankruptcy Court lifted the automatic stay to allow for a determination of priority to the disputed check, the district court denied the motion to dismiss for lack of personal jurisdiction, and Ensign moved for summary judgment. Ensign argued his agricultural supplier's lien had priority over the Bank's security interest and sought a judgment against the Bank for the value of both the January 2002 and the June 2002 checks, plus additional compensation for his care of the buffalo. The Bank made a cross-motion for summary judgment, arguing the agricultural supplier's lien was defective and Ensign was not owed anything. The district court granted summary judgment against the Bank in the amount of $88,857.59 plus costs.

[¶ 7] The district court had subject-matter jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The Bank's appeal was timely under N.D.R.App.P. 4(a). This Court has subject-matter jurisdiction under N.D. Const. art. VI, § 2, and N.D.C.C. §§ 27–02–04 and 28–27–01.

## II

[¶ 8] The dispositive issue on appeal is whether the district court had personal jurisdiction over the Bank.

[¶ 9] A court has subject-matter jurisdiction over an action if the constitution and the laws authorize that court to hear the type of case to which the particular action belongs. *Larson v. Dunn*, 474 N.W.2d 34, 38 (N.D.1991). "A court has personal jurisdiction over a person if the person has reasonable notice that an action has been brought and sufficient connection with the forum state to make it fair to require defense of the action in the state." *Id.* at 38–39. In determining personal jurisdiction over a nonresident defendant, a court must first decide whether the forum state's long-arm provision confers jurisdiction over the nonresident defendant, and, if it does, the court must decide whether the exercise of personal jurisdiction over the nonresident comports with due process. *Rodenburg v. Fargo–Moorhead YMCA*, 2001 ND 139, ¶ 15, 632 N.W.2d 407. To satisfy due process concerns, the nonresident defendant must have sufficient minimum contacts with North Dakota so the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Hansen v. Scott*, 2002 ND 101, ¶ 16, 645 N.W.2d 223.

[¶ 10] North Dakota's long-arm provision is N.D.R.Civ.P. 4(b)(2), which provides in relevant part:

(2) Personal jurisdiction based upon contacts. A court of this state may exercise personal jurisdiction over a person who acts directly or by an agent as to any claim for relief arising from the person's having such contact with this state that the exercise of personal jurisdiction over the person does not offend against traditional notions of justice or fair play or the due process of law, under one or more of the following circumstances:

(A) transacting any business in this state;

. . . .

(H) enjoying any other legal status or capacity within this state;

Rule 4(b)(2) is designed to permit state courts to exercise personal jurisdiction to the fullest extent permitted by due process. *Auction Effertz, Ltd. v. Schecher*, 2000 ND 109, ¶ 6, 611 N.W.2d 173; *United Accounts, Inc. v. Quackenbush*, 434 N.W.2d 567, 569 (N.D.1989).

[¶ 11] Whether a court maintains personal jurisdiction over a party is a question of law, and we review the district court's decision on the matter by employing the de novo standard for legal conclusions and the clear-error standard for factual findings. *Rodenburg*, 2001 ND 139, ¶ 17, 632 N.W.2d 407. Once a defendant has challenged a court's jurisdiction, the plaintiff bears the burden of proving that jurisdiction exists. *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 373 (8th Cir.1990); *Red River Transp. and Dev. Co., Inc. v. Custom Airmotive, Inc.*, 497 F.Supp. 425, 427 (D.N.D.1980). The plaintiff must make a prima facie showing of jurisdiction to defeat a motion to dismiss for lack of personal jurisdiction, and if the court relies only on pleadings and affidavits, the court must look at the facts in the light most favorable to the plaintiff. *Rodenburg*, at ¶ 17. Questions of personal jurisdiction must be decided on a case-by-

case basis, depending on the particular facts and circumstances. *Catlin v. Catlin*, 494 N.W.2d 581, 590 (N.D.1992).

[¶ 12] We have identified five factors for assessing personal jurisdiction over a nonresident defendant: (1) the nature and quality of a nonresident defendant's contacts with the forum state; (2) the quantity of the nonresident defendant's contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties. *Hansen*, 2002 ND 101, ¶ 30, 645 N.W.2d 223; *Lumber Mart, Inc. v. Haas Intern. Sales & Service*, 269 N.W.2d 83, 88 (N.D.1978). While the first three factors are of primary concern, the fourth and fifth factors are of only secondary importance and are not determinative. *Lumber Mart, Inc.*, at 88; *see also Guinness Imp. Co. v. Mark VII Distrib., Inc.*, 153 F.3d 607, 614 (8th Cir.1998).

[¶ 13] In *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 707 (8th Cir.2003), the Eighth Circuit Court of Appeals explained:

The Supreme Court has noted that states exercise two broad types of personal jurisdiction: specific jurisdiction and general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Specific jurisdiction refers to jurisdiction over causes of action that "arise out of" or "relate to" a defendant's activities within a state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). General jurisdiction, "on the other hand, refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Sondergard [v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir.1993)] (citation omit-

ted); *see also Helicopteros*, 466 U.S. at 414, n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404.

General personal jurisdiction is proper only when the defendant has engaged in a high level of continuous and systematic contacts in the forum state. *See Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir.1990). Because of the broad basis for jurisdiction and the requirement of a much higher level of contacts, the exercise of general personal jurisdiction "is typically limited to large companies doing a large amount of business on a regular basis." *Adams v. Riverview Healthcare Ass'n*, No. A3–02–135, 2003 WL 1456442, 2003 U.S. Dist. LEXIS 4253, at * 5 (D.N.D. March 17, 2003). Most courts are hesitant to exercise general personal jurisdiction over nonresident defendants. *Lakin*, 348 F.3d at 708.

[¶ 14] In this case, although the Bank occasionally loans money to North Dakota customers, it does not solicit customers in North Dakota, and the loans are originated in Montana. The Bank has no physical presence in North Dakota. The Bank's affidavit, which was the only evidence before the court on the motion to dismiss on jurisdictional grounds, also states it conducts physical inspections in North Dakota of its collateral on loans "[a]t least annually," and filed financing statements with the North Dakota Secretary of State covering the buffalo in this case. We conclude the Bank's limited contacts with North Dakota are not sufficiently continuous and systematic to justify the exercise of general personal jurisdiction.

[¶ 15] A North Dakota court may exercise specific personal jurisdiction over nonresident defendants only if they " 'purposefully directed their activities towards North Dakota,' " *Rodenburg*, 2001 ND 139, ¶ 19, 632 N.W.2d 407 (quoting *Falkirk Mining Co.*, 906 F.2d at 375), and

the course of action "arise[s] out of" or "relate[s] to" the defendant's activities in the state. *Lakin,* 348 F.3d at 707. Ensign argues jurisdiction is proper here because the Bank makes loans to North Dakota residents; it loaned funds to the Lewises, knowing the buffalo were located in North Dakota; it twice inspected the buffalo collateral at the feedlot; and it filed its financing statement in North Dakota.

[¶ 16] The loans the Bank makes to North Dakota customers do not support specific personal jurisdiction in this case. Ensign is not a Bank customer, and the debtors, the Lewises, are Montana residents. Ensign's action does not "arise out of" or "relate to" loans the Bank made to other North Dakota residents. *Lakin,* 348 F.3d at 707; *see also* 18 J. O'Gallagher & G. O'Grady, *Fletcher Cyclopedia of the Law of Private Corporations* § 8715, at pp. 383–84 (1999) (although a forum state may reach foreign corporate defendants in suits growing out of limited or transient contacts, the "business which is done must ... relate to the cause of action"). Here, Ensign's action to determine priorities and receive a money judgment for the amount of the check in the Bank's possession is totally unrelated to the loans made to other North Dakotans.

[¶ 17] The Bank's knowledge that the collateral was located in North Dakota, its inspections of the collateral, and its filing of the financing statements in this case also do not support the exercise of specific jurisdiction under the circumstances. Numerous courts have held that the filing of a Uniform Commercial Code financing statement by a nonresident defendant does not constitute a voluntary or purposeful effort to do business in the forum state. *See, e.g., Prentice v. Prentice Colour, Inc.,* 779 F.Supp. 578, 588 (M.D.Fla.1991); *Occidental Fire & Cas.*

*Co. v. Continental Illinois Nat'l Bank and Trust Co.,* 689 F.Supp. 564, 567–68 (E.D.N.C.1988); *Foremost Pipeline Constr. Co. v. Ford Motor Co.,* 420 F.Supp. 647, 648 (D.S.C.1976); *Goehring v. Superior Court,* 62 Cal.App.4th 894, 73 Cal. Rptr.2d 105, 113 (1998); *Milberg Factors, Inc. v. Greenbaum,* 585 So.2d 1089, 1092 (Fla.App.1991); *NFD, Inc. v. Stratford Leasing Co.,* 433 N.W.2d 905, 909 (Minn. App.1988). The court reasoned in *Occidental,* 689 F.Supp. at 567, because "the defendant has no control over its customers' use of funds," the "defendant's minimal entry into North Carolina to protect its interests is not a 'voluntary' effort to do business" and "[d]ue process protections would have little meaning if defendant would be subject to suit in every jurisdiction in which customers resided or used funds obtained from the bank." For these same reasons, we conclude the Bank's alleged knowledge that the buffalo were located in North Dakota and the two inspections of the buffalo collateral at Ensign's feedlot do not demonstrate the Bank purposefully directed its activities toward North Dakota. This reasoning also defeats Ensign's argument that the Bank's status as a "secured party" constitutes a "legal status" under N.D.R.Civ.P. 4(b)(2)(H) to support the exercise of personal jurisdiction.

[¶ 18] Moreover, the fact situation before us bears some similarities to the fact situation in *Hust v. Northern Log, Inc.,* 297 N.W.2d 429 (N.D.1980). In *Hust,* the plaintiffs, who resided in Jamestown, North Dakota, viewed a log home built with the defendant's materials and wrote to the corporation's Minnesota headquarters for information. The defendant sent the plaintiffs a brochure, the plaintiffs traveled to Minnesota to view buildings constructed with the corporation's materials, executed a purchase contract, trans-

ported the logs to Jamestown, and began to construct the home there. The defendant's agent assisted in the construction of the home for a two-day period. After problems developed with the home, the plaintiffs sued for breach of express and implied warranties. The district court dismissed the action for lack of personal jurisdiction over the defendant, and this Court affirmed.

[¶ 19] The plaintiffs argued personal jurisdiction existed because the defendant sent an advertising brochure to North Dakota in response to their inquiry; the defendant used the state banking system when it cashed checks given for the purchase of the logs; the defendant contacted the plaintiffs in North Dakota by telephone and sent an agent to North Dakota to render on-site construction aid; and the defendant committed a tort and breached express and implied warranties in the state. This Court ruled the North Dakota court did not have personal jurisdiction over the defendant:

> Northern Log closes no sales in North Dakota; the Husts submitted all payments to Northern Log in Remer, Minnesota; the Husts transported the original set of logs to North Dakota; Northern Log solicits no business in North Dakota through salespersons or through advertising reasonably calculated to reach the State; Northern Log sent the brochure displaying its products after the Husts inquired about building a log home; Northern Log sent its agent for the sole purpose of overseeing the construction of the home in its initial stages; Northern Log does not directly serve the North Dakota market. Thus, Northern Log's contacts with North Dakota can be equated to the "fortuitous circumstance" alluded to by the United States Supreme Court in *World–Wide Volkswagen [Corp. v.*

*Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)].

*Hust,* 297 N.W.2d at 432–33. This Court found it unnecessary to determine whether the applicable subparagraphs of N.D.R.Civ.P. 4(b)(2) had been satisfied because "exercising personal jurisdiction would offend against the traditional notions of justice and fair play under due process." *Id.* at 433.

[¶ 20] As in *Hust,* the Bank's sparse North Dakota activities in this case are not those of a corporation that purposefully avails itself of the privilege of conducting business within North Dakota. The Bank's conduct and connection with North Dakota are not such that it "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. 559. We conclude the district court's exercise of personal jurisdiction over the Bank under these circumstances is constitutionally impermissible.

### III

[¶ 21] The judgment is vacated.

[¶ 22] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, CAROL RONNING KAPSNER, MARY MUEHLEN MARING, JJ., concur.