2013 ND 152

**SOLID COMFORT, INC., Plaintiff and Appellant**

v.

**HATCHETT HOSPITALITY INCORPORATED, Defendant**

and

**Hospitality Depot, LLC, Nu Horizon Renovation, LLC, and William Glenn Hatchett, individually, Defendants and Appellees.**

No. 20120415.

Supreme Court of North Dakota.

Aug. 29, 2013.

416

Katrina A. Turman Lang (argued) and Joseph A. Turman (on brief), Fargo, N.D., for plaintiff and appellant.

Jason R. Butts (argued) and Amy M. Clark (appeared), Wahpeton, N.D., for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Solid Comfort, Inc., appeals from a judgment awarding damages against Hatchett Hospitality, Inc., and dismissing William Glen Hatchett ("Glen Hatchett"), Nu Horizon Renovation, LLC ("Nu Horizon"), and Hospitality Depot, LLC ("Hospitality Depot"), for lack of personal jurisdiction. Under the law applied in the district court, we conclude Solid Comfort established a prima facie showing of personal jurisdiction over Glen Hatchett, Nu Horizon, and Hospitality Depot sufficient to defeat their motion to dismiss. Because we conclude the court erred in dismissing Glen Hatchett, Nu Horizon, and Hospitality Depot for lack of personal jurisdiction, we reverse and remand for further proceedings.

I

[¶ 2] Solid Comfort, a North Dakota corporation with its principal place of business in Fargo, manufactures furniture and fixtures, including hotel furniture. Hatchett Hospitality is a Tennessee corporation that has supplied furniture, fixtures, and equipment to the hotel industry throughout the United States. Glen Hatchett, a Tennessee resident, is the owner and president of Hatchett Hospitality. Solid Comfort and Hatchett Hospitality contracted for Solid Comfort to supply hotel furniture to two separate hotel properties—a Comfort Suites in Hudson, Wisconsin, and a Hampton Inn in Pickwick Dam, Tennessee. In August 2011, December 2011, and January, 2012, Hatchett Hospitality placed orders for hotel furniture and other goods with Solid Comfort, and Solid Comfort delivered the goods under those orders. Solid Comfort required a deposit of one-half of the order amount to be paid at the time of the order, with remaining amounts due after delivery. Although Solid Comfort delivered the goods, Hatchett Hospitality failed to pay the amounts remaining due and owing under the various orders.

[¶ 3] In April 2012, Glen Hatchett, as "the owner and President of Hatchett Hospitality," sent a letter to Solid Comfort indicating Hatchett Hospitality was not able to pay its bills, could not fulfill its orders, and proposing a plan that included "fil[ing] a pre-packaged Chapter 11 Plan of Reorganization." In the letter, Glen Hatchett indicated "[o]ver the last few months" he had terminated "a long term banking relationship," negotiated transfer of their office warehouse building, and substantially downsized the company, stating "[t]he result of these transactions is that I individually have a secured interest in all of the assets of [Hatchett Hospitality] to include all cash, contracts, accounts receivable, furniture, fixtures and equipment in the approximate amount of $3.5M." Hatchett's letter also indicated that Hatchett Hospitality did not have adequate funds to pay its vendors:

Unfortunately, some, but not all of our vendors, have taken the position that unless [Hatchett Hospitality] pays the entire past due invoices, these vendors will no longer honor and ship orders,

even if paid in advance. While I understand the financial pressures that many of these vendors are under, these actions have effectively shut my company down due to our inability to fill orders.

[¶ 4] The letter stated that Hatchett Hospitality's "customers have approximately $2.1M in orders that are pending and those customers still owe Hatchett Hospitality, Inc. approximately $1.6M upon completion of those orders, leaving a potential discrepancy of about $500,000." The letter also said Hatchett Hospitality had "approximately $1.5M in accounts receivable that are in various stages of collection" and that "[a]pproximately $500,000 of that is current and should be collected over the next few months." Hatchett's letter stated that, for vendors agreeing to go along with the proposed plan, he was prepared to subordinate his security interest in Hatchett Hospitality's assets "to the claims of those vendors who supply the goods needed to fill the orders," which would enable the funds be paid to the vendors on a pro rata basis. However, if a vendor did not agree to participate in the plan, he would not "subordinate [his] secured interest to their debt," those vendors would take their risks as general unsecured creditors, and the likelihood of being fully or partially paid was "probably not very good."

[¶ 5] In a June 25, 2012, affidavit, Glen Hatchett further explained that Regions Bank had declared Hatchett Hospitality to be in "technical default" of loan covenants regarding its operating line of credit, and the "lack of liquidity" caused Hatchett Hospitality's financial distress. He explained that the reason he became a secured creditor "stem[med] from the forced restructuring and bank issues *that occurred approximately eighteen months ago*" (emphasis added) and that he had personally purchased with his own assets "the existing line of credit note and related collateral documents from the bank that forced the restructuring." He stated he purchased the promissory note secured by Hatchett Hospitality's assets in April 2011 using personal assets.

[¶ 6] In May 2012, Solid Comfort commenced this action, alleging breach of contract against Hatchett Hospitality for failure to pay under the contracts to purchase hotel furniture and fixtures, and alleging conversion by Hatchett of funds due and owing to Solid Comfort. Solid Comfort also sought to impose liability for Hatchett Hospitality's debts against Glen Hatchett, Nu Horizon, and Hospitality Depot, seeking to pierce the corporate veil of Hatchett Hospitality and claiming Hatchett Hospitality and Glen Hatchett were operating under the alter ego of Hospitality Depot and Nu Horizon. Solid Comfort sought damages for the remaining amounts due under the contracts in the amount of $110,067.87 with interest.

[¶ 7] Hatchett Hospitality answered the complaint, admitting various amounts were due and owing to Solid Comfort. However, Hospitality Depot, Nu Horizon, and Glen Hatchett moved to dismiss on grounds the district court lacked personal jurisdiction over them. Solid Comfort opposed their motion. After a hearing, the court granted the motion to dismiss relying on the pleadings, affidavits and exhibits, concluding Solid Comfort had not made a prima facie showing to establish personal jurisdiction over Glen Hatchett, Nu Horizon, and Hospitality Depot. Solid Comfort then moved for judgment on the pleadings against Hatchett Hospitality, which the court granted. Judgment was entered against Hatchett Hospitality in the amount of $125,296.81, and the complaint against Glen Hatchett, Nu Horizon, and Hospitality Depot was dismissed. It is undisputed on appeal that since the judgment was

entered in this case, Hatchett Hospitality filed a petition for bankruptcy under Chapter 7 in the Western District of Tennessee.

## II

[¶ 8] Solid Comfort argues the district court erred in dismissing Glen Hatchett, Nu Horizon, and Hospitality Depot for lack of personal jurisdiction.

## A

[¶ 9] Our review of a district court's decision regarding personal jurisdiction over a defendant is well-established:

"Analysis of a district court's ruling regarding personal jurisdiction is a question of law, which we consider under the de novo standard of review." *Luger v. Luger*, 2009 ND 84, ¶ 12, 765 N.W.2d 523. "If the defendant challenges the court's [exercise of personal] jurisdiction, the plaintiff bears the burden of proving jurisdiction exists." *Id.* (quoting *Bolinske v. Herd*, 2004 ND 217, ¶ 7, 689 N.W.2d 397); *Ensign v. Bank of Baker*, 2004 ND 56, ¶ 11, 676 N.W.2d 786. "The plaintiff must make a prima facie showing of jurisdiction to defeat a motion to dismiss for lack of personal jurisdiction, *and if the court relies only on pleadings and affidavits, the court must look at the facts in the light most favorable to the plaintiff.*" *Ensign*, at ¶ 11; *see also Bolinske*, at ¶ 7. "Questions of personal jurisdiction must be decided on a case-by-case basis, depending on the particular facts and circumstances." *Ensign*, at ¶ 11; *see also Bolinske*, at ¶ 7.

*Lund v. Lund*, 2012 ND 255, ¶ 7, 825 N.W.2d 852 (emphasis added); *see also Rodenburg v. Fargo–Moorhead Young Men's Christian Ass'n*, 2001 ND 139, ¶ 17, 632 N.W.2d 407.

[¶ 10] We have explained that a two-part test applies for deciding when a court may properly exercise personal jurisdiction over a nonresident defendant. *Lund*, 2012 ND 255, ¶ 8, 825 N.W.2d 852. "The court first must decide whether the requirements of the state's long-arm provision, N.D.R.Civ.P. 4(b)(2), are satisfied and, if so, then must decide whether the exercise of personal jurisdiction comports with due process." *Id.* (citing *Ensign v. Bank of Baker*, 2004 ND 56, ¶ 9, 676 N.W.2d 786; *Hansen v. Scott*, 2002 ND 101, ¶ 16, 645 N.W.2d 223). "To satisfy due process concerns, the nonresident defendant must have sufficient minimum contacts with North Dakota so the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Ensign*, at ¶ 9; *see also Hansen*, at ¶ 16.

[¶ 11] Rule 4(b)(2), N.D.R.Civ.P., North Dakota's long-arm provision, states in relevant part:

(2) *Personal jurisdiction based on contacts.* A court of this state may exercise personal jurisdiction over a person who acts directly or by an agent as to any claim for relief arising from the person's having such contact with this state that the exercise of personal jurisdiction over the person does not offend against traditional notions of justice or fair play or the due process of law, under one or more of the following circumstances:

(A) transacting any business in this state;

(B) contracting to supply or supplying service, goods, or other things in this state . . . .

"Rule 4(b)(2) is designed to permit [North Dakota] courts to exercise personal jurisdiction [over nonresident defendants] to the fullest extent permitted by due process." *Lund*, 2012 ND 255, ¶ 9, 825

N.W.2d 852 (quotations omitted); *see also Ensign,* 2004 ND 56, ¶ 10, 676 N.W.2d 786.

[¶ 12]  In this case, there is no dispute the district court properly exercised personal jurisdiction over Hatchett Hospitality.  Solid Comfort contends, however, the court erred in dismissing the appellees—Glen Hatchett, a Tennessee resident; Nu Horizon, a Tennessee limited liability company; and Hospitality Depot, a Florida limited liability company—based on lack of personal jurisdiction.  Solid Comfort conceded in the district court the only basis for asserting personal jurisdiction over appellees is through piercing the corporate veil of Hatchett Hospitality.  The appellees argue it would offend due process to assert personal jurisdiction over them because none of them owns property in North Dakota, conducts business in North Dakota, or has any contacts with North Dakota.  They further argue Solid Comfort failed to make a prima facie case of piercing the corporate veil against them, "which is required for Solid Comfort to assert personal jurisdiction over them in this case."

### B

[¶ 13]  Solid Comfort argues *Lakota Girl Scout Council, Inc. v. Havey Fund–Raising Mgmt., Inc.,* 519 F.2d 634 (8th Cir.1975), supports the district court's exercise of personal jurisdiction over Glen Hatchett, Nu Horizon, and Hospitality Depot in this case.

■  [¶ 14]  In *Lakota Girl Scout Council,* 519 F.2d at 638, the court held that a district court properly pierced the corporate veil of a defendant corporation to assert personal jurisdiction over the corporation's nonresident dominant shareholder when there was "ample evidence" from trial that the corporation was the shareholder's alter ego.  The court noted:

[T]he fiction of corporate entity may be disregarded, where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation.  Even a non-owned corporation may act as agent for another corporation.  No all embracing rule has been laid down under which the relationship between two corporations may be determined.  The circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction in a state under its long arm statute.

*Id.* at 637.  Thus, "[p]ersonal jurisdiction can be properly asserted over a corporation if another is acting as its alter ego, even if that alter ego is another corporation." *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 649 (8th Cir.2003) (citing *Lakota Girl Scout Council,* 519 F.2d at 637).  The court in *Lakota Girl Scout Council* also stated that "where a corporation is the alter ego of the stockholders so as to justify disregard of the corporate entity jurisdiction over the corporation will support jurisdiction over the stockholders." 519 F.2d at 638 (quoting *Sheard v. Superior Court,* 40 Cal.App.3d 207, 114 Cal.Rptr. 743, 745 (1974)).

■  [¶ 15]  Essentially, due process concerns are satisfied when a defendant corporation with sufficient minimum contacts has an alter ego, because its contacts are considered that shareholder's or corporation's contacts.  *See Lakota Girl Scout Council,* 519 F.2d at 637 ("[I]f the corporation is [the shareholder's] alter ego, its contacts are his and due process is satisfied."); *see also Epps,* 327 F.3d at 649; *In re North Dakota Injury Asbestos Litig. No. 1,* 737 F.Supp. 1087, 1094 (D.N.D. 1990); 4A Charles Alan Wright et al., *Federal Practice and Procedure* § 1069.4 (3d

**422**

ed. 2001 & Supp.2013) ("[C]ourts have exercised personal jurisdiction over a nonresident defendant corporation through ... alter egos, ... and ... other instances in which federal courts were willing to pierce the corporate veil."). As one authority has explained:

> Courts may also exercise jurisdiction over an individual or corporation that is the alter ego of an individual or corporation over which the court has jurisdiction. In this situation the two are considered the same person, and the jurisdictional contacts of one are attributed to the other for purposes of the due process analysis.

16 James Wm. Moore et al., *Moore's Federal Practice* § 108.42[3][b][i] (3d ed.2013).

[¶ 16] We note, however, that North Dakota has not yet applied this principle of vicarious personal jurisdiction over a nonresident dominant shareholder or other nonresident corporation through piercing the corporate veil of a defendant corporation with sufficient minimum contacts. Nonetheless, no party has challenged the application of *Lakota Girl Scout Council* in this case. Assuming this Court would also adopt an analogous rule for asserting personal jurisdiction in North Dakota, we examine the principles of piercing the corporate veil and alter ego under North Dakota law.

**C**

[¶ 17] We have said generally that "[a] corporation's officers and directors ... are not liable for the corporation's ordinary debts." *Watts v. Magic 2 × 52 Mgmt., Inc.,* 2012 ND 99, ¶ 12, 816 N.W.2d 770; *see also Coughlin Constr. Co. v. Nu–Tec Indus., Inc.,* 2008 ND 163, ¶ 19, 755 N.W.2d 867; *Axtmann v. Chillemi,* 2007 ND 179, ¶ 12, 740 N.W.2d 838. But, "the corporate veil may be pierced when the legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime." *Coughlin Constr.,* at ¶ 19. We have discussed the following factors for the district court's consideration in deciding whether to pierce the corporate veil:

> [F]actors considered significant in determining whether or not to disregard the corporate entity include: insufficient capitalization for the purposes of the corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation at the time of the transaction in question, siphoning of funds by the dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and the existence of the corporation as merely a facade for individual dealings.

*Coughlin Constr.,* at ¶ 20 (quotations and citations omitted). Before a court may properly pierce the corporate veil, "an element of injustice, inequity or fundamental unfairness" must also be present. *Id.* (quoting *Jablonsky v. Klemm,* 377 N.W.2d 560, 564 (N.D.1985)).

[¶ 18] Additionally, North Dakota recognizes the "alter ego" approach to piercing the corporate veil. We have said that "[t]o apply the alter ego doctrine, 'there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist,' and 'there must be an inequitable result if the acts in question are treated as those of the corporation alone.'" *Red River Wings, Inc. v. Hoot, Inc.,* 2008 ND 117, ¶ 34, 751 N.W.2d 206 (quoting *Sonora Diamond Corp. v. Superior Court,* 83 Cal.App.4th 523, 99 Cal.Rptr.2d 824, 836 (2000), and citing *Axtmann,* 2007 ND 179, ¶¶ 12–15, 740 N.W.2d 838; *Jablonsky,* 377 N.W.2d at 563–67; *Hilzendager v. Skwarok,* 335

N.W.2d 768, 774–75 (N.D.1983)). "The burden of proving the requirements for piercing the corporate veil is on the party asserting the claim." *Watts*, 2012 ND 99, ¶ 13, 816 N.W.2d 770. In the context of a trial of contested facts, we have explained that "[r]esolving the issue is heavily fact-specific and, therefore, is *within the sound discretion* of the district court." *Id.*

[¶ 19] In this case, however, the district court did not hold an evidentiary hearing on the motion to dismiss, but rather relied only on the pleadings, affidavits, and exhibits submitted in deciding the motion. We must therefore examine the facts in the light most favorable to Solid Comfort to decide whether Solid Comfort established a prima facie case for exercise of personal jurisdiction over Glen Hatchett, Nu Horizon, and Hospitality Depot. *See Ensign*, 2004 ND 56, ¶ 11, 676 N.W.2d 786 ("[P]laintiff must make a prima facie showing of jurisdiction to defeat a motion to dismiss for lack of personal jurisdiction, and if the court relies only on pleadings and affidavits, the court must look at the facts in the light most favorable to the plaintiff."); *see also Rodenburg*, 2001 ND 139, ¶ 17, 632 N.W.2d 407; *cf. Sweeney v. Kirby*, 2013 ND 9, ¶ 5, 826 N.W.2d 330 ("Prima facie case" is "only 'enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor.' It is a bare minimum."); *In re Estate of Clemetson*, 2012 ND 28, ¶ 8, 812 N.W.2d 388 ("A prima facie case is established '[i]f the party bearing the burden of proof presents evidence strong enough, if uncontradicted, to support a finding in her favor.' "). We turn to whether personal jurisdiction exists over the appellees through piercing the corporate veil of Hatchett Hospitality.

### D

[¶ 20] In granting the motion to dismiss, the district court held there was no evidence before the court to suggest insufficient capitalization for the purpose of the corporate undertaking. The court concluded there was no evidence on which to find "a prima facie case of Hatchett's failure to observe corporate formalities, not paying dividends, siphoning of funds by the dominant shareholder or nonfunctioning of other officers and directors, nor absence of corporate records." The court reasoned that, in Glen Hatchett's affidavit supporting the motion to dismiss, Hatchett stated that he was personally involved in the operation of Hatchett Hospitality, Nu Horizon, and Hospitality Depot; that Hatchett Hospitality, Nu Horizon, and Hospitality Depot are separate and distinct companies, keeping their own books and filing their own tax returns; and that there is no profit sharing or intermingling of assets among the companies. The court also relied on Glen Hatchett's attestation that "when Hatchett entered into the contracts with Solid Comfort, it was not insolvent." The court further stated: "The fact that Nu [Horizon] was a corporation formed just prior to the closing of Hatchett [Hospitality] is really of no consequence, given that organizing corporations to avoid personal liability is not a grounds for piercing the corporate veil." The court held Solid Comfort failed to make a prima facie showing of "injustice, inequity, or fundamental unfairness sufficient to pierce the corporate veil."

[¶ 21] Solid Comfort contends, however, that it established a prima facie case to pierce the corporate veil and disregard the corporate entity of Hatchett Hospitality because it established multiple factors, including insufficient capitalization for the purposes of the corporate undertaking, insolvency of the debtor corporation at the time of the transaction in question, potential siphoning funds by the dominant shareholder, nonfunctioning of other offi-

cers and directors, and the existence of the corporation as merely a facade for individual dealings. Solid Comfort also contends it made a prima facie case against Nu Horizon and Hospitality Depot as the alter egos of Hatchett Hospitality sufficient to acquire personal jurisdiction. In considering the facts in the record in the light most favorable to Solid Comfort, we believe Solid Comfort established a prima facie case for the assertion of personal jurisdiction.

[¶ 22] In opposing appellees' motion to dismiss, Solid Comfort submitted several affidavits and exhibits, including Glen Hatchett's April 2012 letter to Solid Comfort, and the affidavit of LeeAnn Jones, a former regional sales director of Hatchett Hospitality who had worked at Hatchett Hospitality for over three years until she resigned in February 2012. In her affidavit, Jones states that Hatchett Hospitality had closed its offices in Memphis, Tennessee, and moved to two other locations in Moscow, Tennessee, in January 2012. Jones described a conference call held with all sales personnel in late January, in which they were asked to transition all new contracted business to Hospitality Depot, which was solely owned by Glen Hatchett. She states that sales staff that did not leave Hatchett Hospitality at that time were moved to Hospitality Depot, "[a]ny new contracts were signed to Hospitality Depot, LLC after January 2012," and that she ran "small replenishment and urgent orders" through Hospitality Depot during this "transition phase."

[¶ 23] Jones states the only thing about her job that would have changed was the logo on her business cards, her compensation package, and the company name on contracts, but that she would have been working with the same vendors to supply hotel furnishings to various hotel accounts, except under the name Hospitality Depot rather than Hatchett Hospitality. Jones's

affidavit also states that, before January 2012, Hatchett Hospitality had at least three divisions, including hospitality, trucking, and construction and that "the construction division was renamed Nu Horizons Renovation LLC." She also states she had yet to receive any compensation for the business and deposits she had delivered to Hatchett Hospitality in late 2011.

[¶ 24] The record shows that Hospitality Depot is a limited liability company in Panama City, Florida, and that Glen Hatchett is the sole member and owner of Hospitality Depot. There was also evidence that Hospitality Depot was listed on Hatchett Hospitality's website as a "specialty division" of Hatchett Hospitality that provides linens, housewares, and other housekeeping goods. There was also a copy of an email from a Hospitality Depot employee, which included an address for Hospitality Depot in Collierville, Tennessee but with an email address ending in hatchetthospitality.com. The employee stated in the email that he was no longer an employee of Hatchett Hospitality, but was now employed by Hospitality Depot. Thus, there is evidence showing Hospitality Depot operating with at least two former Hatchett Hospitality employees, serving the same accounts, and filling at least some of Hatchett Hospitality's orders.

[¶ 25] The record also shows that Nu Horizon, initially named H2H Installation & Renovation, LLC, was organized and registered as a limited liability company in the State of Tennessee in June 2011, with the same address as Hatchett Hospitality in Memphis, Tennessee. Glen Hatchett is Nu Horizon's registered agent and is one of two members of Nu Horizon, the other member being his son. In December 2011, Nu Horizon filed articles of amendment changing Nu Horizon's name to its present name and its current address to Moscow,

Tennessee. However, there is also evidence in the record that the Nu Horizon website listed its main office in LaGrange, Tennessee, which is the same as Hatchett Hospitality's new registered agent address for Glen Hatchett. Nu Horizon's website also lists the Hampton Inn in Pickwick Dam, Tennessee, as one of its projects.

[¶ 26] The record shows Glen Hatchett is the president and sole shareholder of Hatchett Hospitality. It is undisputed Glen Hatchett asserted, as the owner and president in his April 2012 letter to Solid Comfort, that he had taken certain actions "[o]ver the last few months" to "terminate[ ] a long-term banking relationship; negotiate[ ] the transfer of [the] office warehouse building; and down-sized [the] company substantially." The record shows that Hatchett Hospitality was in "financial distress" around the time it entered into the transactions with Solid Comfort. In his affidavit, Glen Hatchett explained the bank had declared only a "technical default," leading to Hatchett Hospitality's "lack of liquidity" and "financial distress." Glen Hatchett stated that he purchased and owned a promissory note secured by the assets of Hatchett Hospitality that he acquired in April 2011 using his own assets. Glen Hatchett's April 2012 letter indicates that Hatchett Hospitality's financial distress led to Glen Hatchett taking the secured interest in all of the assets.

[¶ 27] Regarding Solid Comfort's assertion that it established a prima facie case against Nu Horizon and Hospitality Depot as the alter ego of Hatchett Hospitality, there is evidence Hatchett Hospitality's website stated Hospitality Depot was a specialty division of Hatchett Hospitality, despite the appellees' assertion that this was merely an error. Jones's affidavit further establishes Hatchett Hospitality employees were asked to transition new

contracted business to Hospitality Depot. The evidence also shows that Hospitality Depot had discretion to accept or deny the orders of Hatchett Hospitality.

[¶ 28] Although appellees deny Hatchett Hospitality had separate divisions, the record shows Hatchett Hospitality's operations included hospitality, trucking, and construction. Glen Hatchett's affidavit also confirmed that Nu Horizon was formed in June 2011 and that it performs installation and construction services. One of Nu Horizon's clients is the Hampton Inn in Pickwick Dam, Tennessee. The facts suggest that at some point Hatchett Hospitality and Nu Horizon had the same address, at least upon the initial organization of Nu Horizon. The record shows Glen Hatchett's ownership and involvement in all three entities, including as sole shareholder and president of Hatchett Hospitality, one of two members of Nu Horizon, and a member of Hospitality Depot.

[¶ 29] Taken in the light most favorable to Solid Comfort, we believe the record shows sufficient facts to establish a prima facie case to exercise personal jurisdiction over Glen Hatchett, Nu Horizon, and Hospitality Depot on the basis of piercing the corporate veil of Hatchett Hospitality. The relevant facts are largely undisputed, including that Hatchett Hospitality was under financial distress around the time of the transactions with Solid Comfort; that there was some level of self-dealing by Glen Hatchett taking a security interest in all of Hatchett Hospitality's assets; that some of Hatchett Hospitality's contracted business was transferred to Hospitality Depot when "it made fiscal sense;" that some Hatchett Hospitality personnel were offered employment at Hospitality Depot; and that Nu Horizon had at some point shared an address and

listed a similar project in Tennessee with Hatchett Hospitality.

[¶ 30] We conclude the district court erred in granting the motion to dismiss because Solid Comfort established a prima facie case to exercise personal jurisdiction over Glen Hatchett, Nu Horizon, and Hospitality Depot under the law applied in the district court. We therefore reverse and remand for trial on whether to pierce the corporate veil of Hatchett Hospitality to impose liability on Glen Hatchett, Nu Horizon, and Hospitality Depot for the judgment against Hatchett Hospitality.

### III

[¶ 31] Solid Comfort moved this Court to take judicial notice and to supplement the record with the bankruptcy petition and schedules of Hatchett Hospitality. Generally, our case law indicates the content of filings in other court proceedings would not be subject to judicial notice as evidence offered for the truth of the matter asserted. *See Wessman v. Wessman,* 2008 ND 62, ¶ 19, 747 N.W.2d 85. Nonetheless, although the parties acknowledged in the district court proceedings that Hatchett Hospitality was contemplating filing bankruptcy, none of the materials with which Solid Comfort seeks to supplement the record on appeal were considered by the district court. However, because our disposition contemplates further proceedings in the district court, we deny Solid Comfort's motion to supplement the record on appeal. We also deny appellees' request for attorney's fees for responding to the motion.

[¶ 32] We note the parties have not suggested on appeal the bankruptcy stay prohibits further proceedings against the non-bankrupt co-defendants. However, the parties must promptly notify the district court on remand if proceedings against the co-defendants become subject to the automatic stay. *See Watts,* 2012 ND 99, ¶ 26, 816 N.W.2d 770 (automatic stay extends only to stay an action against a debtor involved in a bankruptcy proceeding, but not co-defendants who are not in bankruptcy); *but see Superpumper, Inc. v. Nerland Oil, Inc.,* 2000 ND 220, ¶¶ 10–12, 620 N.W.2d 159 ("automatic stay of 11 U.S.C. § 362(a)(1) applies to actions against non-debtor co-defendants in 'unusual circumstances'" and § 362(a)(3) stays "any action against a debtor or third party to obtain possession or exercise control over property of the debtor"); *West Gate Bank v. American Nat'l Bank,* 250 Neb. 506, 550 N.W.2d 318, 320 (1996) ("State court action comes within the terms of an automatic stay if it is to obtain property of an estate or to recover a claim against the debtor.").

### IV

[¶ 33] The judgment dismissing Glen Hatchett, Nu Horizon, and Hospitality Depot is reversed and the case is remanded for further proceedings.

[¶ 34] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

CROTHERS, Justice, concurring in the result.

[¶ 35] I agree the Court has reached the correct result under *Lakota Girl Scout Council, Inc. v. Havey Fund–Raising Mgmt., Inc.,* 519 F.2d 634 (8th Cir.1975), and our precedent by the majority of the Court. That said, we do not reach the question here but, for me, it is an open question whether *Lakota Girl* was correctly decided. I already have written about why I believe North Dakota courts are too easily piercing corporate veils and too easily finding alter egos. *See Axtmann v. Chillemi,* 2007 ND 179, 740 N.W.2d 838

(Crothers, J., concurring in part and dissenting in part).

[¶ 36]   DANIEL J. CROTHERS.