2004 ND 217

**Robert V. BOLINSKE, Plaintiff and Appellant**

v.

**Thomas J. HERD and Gaddis, Kin & Herd, P.C., Defendants and Appellees.**

**No. 20040086.**

Supreme Court of North Dakota.

Nov. 19, 2004.

Robert V. Bolinske, pro se, Bismarck, ND, plaintiff and appellant.

Lawrence A. Dopson, Zuger Kirmis & Smith, Bismarck, ND, for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] Robert Bolinske appeals a summary judgment dismissing his lawsuit against Thomas Herd and Gaddis, Kin & Herd, P.C. ("Gaddis"), a Colorado law firm, for lack of personal jurisdiction. We affirm the district court's summary judgment.

I

[¶ 2] In September 1998, Bolinske contacted Herd, an attorney at Gaddis, for the purpose of representing two North Dakota residents, Ronald and Marci Schorsch ("the Schorsches"), who were involved in a motor vehicle accident in Colorado. On September 17, 1998, Bolinske sent a letter to Herd, stating he understood he would receive one-third of the fee while Herd's firm would receive two-thirds. Herd, in an affidavit, said that they talked only briefly about dividing the fees and that they would divide them only if Bolinske participated in the case, because Colorado prohibited referral fees.

[¶ 3] After agreeing to represent the Schorsches, Herd filed a complaint in the Colorado district court. Gaddis contacted persons or entities in North Dakota at least 168 times by mail and telephone for the purpose of representing the Schorsches, but all of the legal pleadings and discovery were conducted in or from Colorado, Gaddis deposed a North Dakota doctor over the telephone, and the lawsuit was settled through arbitration in Colorado. No one from the firm ever traveled to North Dakota for any purpose during the time of the litigation.

[¶ 4] Bolinske called Gaddis in January 2001 to inquire about the case and learned Herd had settled the case on behalf of the Schorsches. Bolinske inquired twice more about the fee agreement, by letter on March 1, 2001, and by telephone to the firm on January 17, 2002. Bolinske was told by the senior partner at Gaddis that he would check into the agreement. Bolinske did not hear back from the firm after the telephone call and subsequently filed a lawsuit in the South Central Judicial District Court on July 3, 2002. Herd filed a limited appearance for the purpose of objecting to the jurisdiction on July 29, 2002.

[¶ 5] The district court dismissed Bolinske's claim, holding Bolinske failed to demonstrate that Herd subjected himself, along with Gaddis, to personal jurisdiction in North Dakota.

[¶ 6] The district court had subject matter jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 2, and N.D.C.C. §§ 27–02–04 and 28–27–01.

## II

[¶ 7] Analysis of a trial court's ruling regarding personal jurisdiction is a question of law, and we use the de novo standard of review for legal conclusions and a clearly erroneous standard for factual findings. *Ensign v. Bank of Baker,* 2004 ND 56, ¶ 11, 676 N.W.2d 786; *Auction Effertz, Ltd. v. Schecher,* 2000 ND 109, ¶ 10, 611 N.W.2d 173. "A finding of fact is clearly erroneous if it is not supported by any evidence, if, although there is some evidence supporting the finding, a reviewing court is left with a definite and firm conviction a mistake has been made, or if the finding is induced by an erroneous conception of the law." *Auction Effertz, Ltd.,* at ¶ 10. If the defendant challenges the court's jurisdiction, the plaintiff bears the burden of proving jurisdiction exists. *Ensign,* at ¶ 11. "The plaintiff must make a prima facie showing of jurisdiction to defeat a motion to dismiss for lack of personal jurisdiction, and if the court relies only on pleadings and affidavits, the court must look at the facts in the light most favorable to the plaintiff." *Id.* "Questions of personal jurisdiction must be decided on a case-by-case basis, depending on the particular facts and circumstances." *Id.*

## III

[¶ 8] "A court has subject matter jurisdiction over an action if the constitution and the laws authorize that court to hear the type of cases to which the particular action belongs." *Larson v. Dunn,* 474 N.W.2d 34, 38 (N.D.1991). In *Ensign,* we stated:

"A court has personal jurisdiction over a person if the person has reasonable notice that an action has been brought and sufficient connection with the forum state to make it fair to require defense of the action in the state." In determining personal jurisdiction over a nonresident defendant, a court must first decide whether the forum state's long-arm provision confers jurisdiction over the nonresident defendant, and, if it does, the court must decide whether the exercise of personal jurisdiction over the nonresident comports with due process. To satisfy due process concerns, the nonresident defendant must have sufficient minimum contacts with North Dakota so the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

*Ensign,* 2004 ND 56, ¶ 9, 676 N.W.2d 786 (citations omitted).

[¶ 9] For personal jurisdiction, one of the subparagraphs of N.D.R.Civ.P. 4(b) must be satisfied. *Hansen v. Scott,* 2002 ND 101, ¶ 16, 645 N.W.2d 223; *Auction Effertz, Ltd.,* 2000 ND 109, ¶ 6, 611 N.W.2d 173. The rule provides, in part:

(b) Jurisdiction Over Person.

. . . .

(2) Personal Jurisdiction Based Upon Contacts. A court of this state may exercise personal jurisdiction over a person who acts directly or by an agent as to any claim for relief arising from the person's having such contact with this state that the exercise of personal jurisdiction over the person does not offend against traditional notions of justice or fair play or the due process of law, under one or more of the following circumstances:

(A) transacting any business in this state;

(B) contracting to supply or supplying service, goods, or other things in this state;

. . . .

(H) enjoying any other legal status or capacity within this state; or

(I) engaging in any other activity ... within this state.

(3) Limitation on Jurisdiction Based Upon Contacts. If jurisdiction over a person is based solely upon paragraph (2) of this subdivision, only a claim for relief arising from bases enumerated therein may be asserted against that person.

N.D.R.Civ.P. 4(b)(2), (3). North Dakota's long-arm provision is designed to permit state courts to exercise personal jurisdiction to the fullest extent permitted by due process. *Ensign*, 2004 ND 56, ¶ 10, 676 N.W.2d 786.

■■■■ [¶ 10] The phrase "transacting any business in this state" should be given an expansive interpretation. *United Accounts, Inc. v. Quackenbush*, 434 N.W.2d 567, 570 (N.D.1989). Transacting business is used in a broader sense than merely doing business. *Id.* We recognize that operative facts vary in each case, but when a nonresident initiates contact, by telephone or other electronic medium, with a resident seeking a product or service, that action is generally sufficient to show the nonresident transacted business for purposes of establishing personal jurisdiction. *Auction Effertz, Ltd.*, 2000 ND 109, ¶ 8, 611 N.W.2d 173. Transacting business, however, does not extend to activities relating to third parties or to other transactions that are not related to the activity in question under Rule 4(b)(2)(B). *See Lumber Mart, Inc. v. Haas International Sales and Service, Inc.*, 269 N.W.2d 83 (N.D. 1978) (the fact the defendant extensively used North Dakota's roads and had substantial business with a third party within the state does not subject it to personal jurisdiction).

■■■■ [¶ 11] Because Bolinske sought legal services in Colorado, Bolinske's argument that Herd subjected himself, as well as Gaddis, to personal jurisdiction in North Dakota is misplaced. Bolinske relies on *Auction Effertz, Ltd.*, to support his contention that Herd conducted business in this state by use of the interstate telephone system. *Auction Effertz, Ltd.*, is antithetic because in that case the nonresident initiated the contact with a North Dakota resident, as opposed to this case in which Bolinske initiated contact and sought services from a nonresident. Bolinske is also not able to show that Herd or Gaddis entered into a contract, enjoyed legal status, or engaged in any other activity within North Dakota. Neither Herd nor any other attorney at Gaddis ever applied for *pro hac vice* status in North Dakota, nor did any of them ever form a contract in the state. N.D.R.Ct. 11.1. Bolinske solicited Herd in Colorado to represent the Schorsches; therefore, the contract, if there is one, was entered into in Colorado and not North Dakota. Because Herd and Gaddis did not transact business, contract to supply services to Bolinske, or enjoy other legal status in North Dakota, the requirements under N.D.R.Civ.P. 4(b)(2) have not been satisfied.

IV

■■■■ [¶ 12] The exercise of personal jurisdiction in this case would offend traditional notions of justice and fair play under the concept of due process, because Herd and Gaddis had insufficient contacts with North Dakota. We have enumerated "five factors for assessing personal jurisdiction over a nonresident defendant: (1) the nature and quality of a nonresident defendant's contacts with the forum state; (2) the quantity of the nonresident defendant's contacts with the forum state; (3) the rela-

tion of the cause of action to the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties." *Ensign*, 2004 ND 56, ¶ 12, 676 N.W.2d 786. The first three factors are of primary concern, while the fourth and fifth factors are of secondary importance and are not determinative. *Id.*

[¶ 13] Bolinske argues Gaddis's contacts are sufficient to establish personal jurisdiction because individuals from the firm contacted North Dakota roughly ninety-eight times by telephone and sent at least sixty-three letters of correspondence to North Dakota. But Herd personally contacted Bolinske only one time, and that was in response to Bolinske's request that he represent the Schorsches. After the initial correspondence between Herd and Bolinske, Herd filed the case in Colorado, conducted all of the depositions, prepared interrogatories, prepared all witnesses and clients for their testimony, and represented the clients during the settlement conference and arbitration. After he contacted Herd, Bolinske did not participate in the case and did not facilitate its settlement. We have held that contacts consisting merely of long-distance telephone calls do not satisfy the minimal constitutional contacts required by due process. *Lumber Mart, Inc.*, 269 N.W.2d at 90. Contacts including the use of the mail system and trucking and banking facilities, however, along with telephone lines, have been held to be sufficient to impose personal jurisdiction on an out-of-state defendant. *Hebron Brick Co. v. Robinson Brick and Tile Co.*, 234 N.W.2d 250, 257 (N.D.1975).

[¶ 14] A Montana Supreme Court case is persuasive. A Montana attorney referred Montana residents to an Idaho attorney for representation in a claim arising out of an automobile accident in Idaho. *Bird v. Hiller*, 270 Mont. 467, 892 P.2d 931, 934 (1995). The Montana Supreme Court held jurisdiction was not acquired through interstate communications under a contract to be performed in another state despite the fact the Idaho attorney sent the contingency fee agreement and other letters to Montana. *Id.*

[¶ 15] Several other courts that have addressed the issue of in-state lawyers requesting out-of-state firms to pay referral fees have found the in-state lawyer's act of soliciting the out-of-state firm is an important factor in determining whether the firm subjected itself to personal jurisdiction in the state. *See Jaffe v. Julien*, 754 F.Supp. 49 (E.D.Pa.1991) (the unsolicited referral of business to an out-of-state lawyer from an in-state lawyer does not provide sufficient contacts to make the former amenable to suit in Pennsylvania); *Shirkey v. McMaster*, 876 S.W.2d 648 (Mo.Ct. App.1994) (a Kansas lawyer was not subject to personal jurisdiction in Missouri when he accepted an offer initiated by a Missouri lawyer to represent the Missouri lawyer's client on a 50/50 split fee). Because the nature, quality, and quantity of the contacts between Bolinske and Herd and Gaddis were few and were initiated by Bolinske, Herd and Gaddis's contacts fail to fulfill the first two factors of the due process personal jurisdiction test.

[¶ 16] Bolinske argues that North Dakota acquired personal jurisdiction based on the contacts Herd and Gaddis had with the state, through their representation of the Schorsches. The relationship between those contacts and Bolinske's suit is, at best, tenuous. The minimal contacts of the nonresident party in the forum state must be directly related to and connected with the cause of action involved. *Lumber Mart, Inc.*, 269 N.W.2d at 89. " 'Case law overflows on the point that providing out-of-state legal representation is not enough to subject an out-of-state lawyer or law firm to the personal jurisdiction of the state in which

a client resides.'" *Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C.*, 866 So.2d 519, 529 (Ala.2003) (quoting *Cape v. von Maur*, 932 F.Supp. 124, 128 (D.Md. 1996)). The out-of-state activities undertaken on behalf of an in-state client by an out-of-state lawyer, however substantial, are immaterial to the minimum-contact analysis. *Id.* The mere fact that an attorney-client relationship exists, without other sufficient contacts with the forum, does not confer personal jurisdiction over the firm. *Id.*; *see also Cerberus Partners, L.P. v. Gadsby & Hannah, LLP*, 836 A.2d 1113 (R.I.2003) (the mailing of bills and invoices aggregating in the hundreds of thousands of dollars to an in-state client by an out-of-state firm was not sufficient contact with the state; more was required).

[¶ 17] Bolinske attempts to count the contacts Herd and Gaddis had with North Dakota through their representation of the Schorsches as contacts that are relevant and related to this suit. The contacts Herd and Gaddis had with North Dakota, however, were for the purpose of representing the Schorsches and are only tangentially related to Bolinske's suit, thus failing to fulfill the third factor for assessing personal jurisdiction.

## V

[¶ 18] Because Bolinske failed to show that Herd or Gaddis is subject to N.D.R.Civ.P. 4(b)(2), and failed to satisfy the first three determinative factors for assessing personal jurisdiction, we affirm the district court's dismissal.

[¶ 19] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.