2007 ND 180

**INTERCEPT CORPORATION,**
Plaintiff and Appellee

v.

**CALIMA FINANCIAL, LLC, dba Cyber Cash Funding, Defendant**

and

**Edgar G. Santos–Hill, individually, Defendant and Appellant.**

No. 20060307.

Supreme Court of North Dakota.

Nov. 14, 2007.

Brad A. Sinclair, Serkland Law Firm, Fargo, N.D., for plaintiff and appellee.

Edgar G. Santos–Hill, Fort Lauderdale, FL, pro se.

SANDSTROM, Justice.

[¶ 1]  Edgar Santos–Hill appeals a district court judgment finding him personally responsible for Intercept Corporation's $63,500 judgment against Calima Financial, LLC. We affirm, concluding the district court acted properly in piercing the corporate veil.

I

[¶ 2]  Santos–Hill, a Florida resident, formed Calima Financial, LLC, in April 2004 in the state of Utah. Calima was in the business of payday lending, and Santos–Hill was the only member listed on the articles of organization.  Intercept, a North Dakota corporation, is in the business of electronically transferring funds for its clients. In June 2004, Santos–Hill contacted Intercept by telephone, seeking to utilize its services.  Santos–Hill, as vice

president of Calima, completed an application to do business with Intercept. In its application, Calima stated the average single transaction would be $300. In July 2004, Calima and Intercept entered into a contract to have Intercept electronically transfer funds for Calima. Calima started with $25,000 in capital, and $7,000 of that was used as a security deposit with Intercept when the entities began their relationship. No additional capital was ever contributed.

[¶ 3] Under the parties' agreement, Santos–Hill would request Intercept to transfer funds from Calima's account to Calima's clients, and then when payments were due from Calima's clients, Intercept would transfer funds from Calima's clients to Calima's account. Calima warranted under the agreement that the funds it requested Intercept to transfer from Calima's account to Calima's clients were funds existing in Calima's account. The agreement also stated the funds transferred by Intercept "cannot exceed the amount agreed to between Intercept and the Company [Calima]." The agreement was to be governed by North Dakota law.

[¶ 4] From December 21, 2004, to December 24, 2004, a series of electronic fund transfers performed by Intercept were returned because of non-sufficient funds in Calima's account. The amount of the transfers totaled $63,500, which was distributed as follows: $40,000 to Costeno Contracting, Inc., $16,000 to Santos–Hill, and $7,500 to Delys St. Hill. Santos–Hill claimed the transactions were payday loans to Calima clients.

[¶ 5] In March 2005, Intercept sued Calima and Santos–Hill individually for breach of contract, seeking a return of the $63,500. Santos–Hill answered, alleging he was not personally responsible for the debt. Intercept then moved for summary judgment. Santos–Hill moved to deny In-

tercept's motion for summary judgment, and to dismiss the complaint, claiming he was an employee of Calima and thus not personally liable for the debt. The district court granted summary judgment against Calima and Santos–Hill.

[¶ 6] Santos–Hill moved to vacate the summary judgment entered against him. After a hearing on the motion, the court vacated the judgment under N.D.R.Civ.P. 60(b)(vi) as to Santos–Hill because it found there were genuine issues of material fact as to what Santos–Hill's role was with Calima other than simply as an officer of the company. The court concluded the issue of piercing the corporate veil could not be decided as a matter of law, and Intercept would have the burden at trial of establishing the necessary elements to pierce the corporate veil.

[¶ 7] Prior to trial, Santos–Hill sought to amend his answer, asserting the district court lacked personal jurisdiction. He claimed he was unaware of the requirement of pleading affirmative defenses under North Dakota law. The court denied the motion, concluding Santos–Hill made a voluntary appearance in the action by filing an answer and other motions without raising lack of personal jurisdiction.

[¶ 8] A bench trial was held in August 2006. In its memorandum and opinion following trial, the court found Santos–Hill was not acting simply as an officer of Calima. The court found he had obtained the $63,500 for his own benefit. Therefore, the court pierced the corporate veil of Calima and concluded Santos–Hill was personally liable for the $63,500 judgment against Calima.

[¶ 9] The district court had subject matter jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Santos–Hill's appeal is timely under N.D.R.App.P. 4(a). This Court has juris-

diction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 10] On appeal, Santos–Hill argues the district court lacked personal jurisdiction over him individually. A district court acquires personal jurisdiction over a party under N.D.R.Civ.P. 4. *Rowley v. Cleaver*, 1999 ND 158, ¶ 9, 598 N.W.2d 125. Under N.D.R.Civ.P. 4(b)(4), a court may acquire personal jurisdiction over a non-resident if the party makes a voluntary general appearance and fails to assert the lack of personal jurisdiction. *Id.* The concept of "appearance" is broadly defined, and it includes an assortment of acts by a defendant that respond to the complaint sufficiently to give the plaintiff notice of the defendant's intention to contest the claim. *Hatch v. Hatch*, 484 N.W.2d 283, 285 (N.D.1992). A lack-of-personal-jurisdiction defense is waived if it is neither made by motion nor included in a responsive pleading. N.D.R.Civ.P. 12(h)(1). A district court's ruling regarding personal jurisdiction is a question of law, which is fully reviewable on appeal. *Bolinske v. Herd*, 2004 ND 217, ¶ 7, 689 N.W.2d 397.

[¶ 11] Santos–Hill individually filed an answer in response to Intercept's complaint. He did not raise the lack-of-personal-jurisdiction defense in his answer, nor did he timely file a separate motion alleging lack of personal jurisdiction under N.D.R.Civ.P. 12(b). His answer gave Intercept sufficient notice of his intention to contest the claim; therefore, his answer constituted a voluntary appearance under N.D.R.Civ.P. 4(b)(4). Because Santos–Hill failed to properly raise the lack-of-jurisdiction defense, he waived the defense under N.D.R.Civ.P. 12(h)(1). Therefore, we conclude the district court had personal jurisdiction over Santos–Hill.

## III

[¶ 12] Santos–Hill argues he was an employee of Calima, and not a member of the company, as the district court found. A district court's finding of fact is subject to the clearly erroneous standard of review. N.D.R.Civ.P. 52(a). A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, this Court is left with a definite and firm conviction a mistake has been made. *In re D.M.*, 2007 ND 62, ¶ 6, 730 N.W.2d 604.

[¶ 13] Santos–Hill formed Calima in April 2004. He produced documents showing he had transferred ownership of Calima to Cristina Munoz, a resident of Panama, shortly after Calima was formed. He also testified in a deposition that Munoz was the owner. At the time of the December 2004 transactions, however, Santos–Hill was still listed as the owner of Calima in the State of Utah, where Calima was formed. There was also evidence that Santos–Hill referred to Calima as "my company" in an August 2004 e-mail he sent to Intercept after he allegedly transferred ownership. Intercept was never informed of a transfer of ownership. The district court found Santos–Hill's testimony and the documentary evidence showing a transfer of ownership were not credible. We conclude the district court did not err in finding Santos–Hill was a member of Calima.

## IV

[¶ 14] Santos–Hill argues the district court erroneously found him personally liable for Intercept's judgment against Calima. He argues there can be no personal liability for members of a limited liability company. Under N.D.C.C.

§ 10–32–29(1), "a member, governor, manager, or other agent of a limited liability company is not, merely on account of this status, personally liable for the acts, debts, liabilities, or obligations of the limited liability company." A member or owner of a limited liability company will be personally responsible, however, if the conditions and circumstances under which the corporate veil of a corporation may be pierced under North Dakota law are present. N.D.C.C. § 10–32–29(3).

[¶ 15] The corporate veil may be pierced when the legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime. *Jablonsky v. Klemm*, 377 N.W.2d 560, 563 (N.D. 1985). "[A]n element of injustice, inequity or fundamental unfairness must be present before a court may properly pierce the corporate veil." *Id.* at 564. The burden of establishing the necessary elements for piercing the corporate veil rests on the party asserting the claim. *Id.* at 565. Resolving the issue is heavily fact-specific and, therefore, is within the sound discretion of the district court. *Id.* The court's findings of fact are presumed to be correct, and will be reversed on appeal only if they are clearly erroneous. *Habeck v. MacDonald*, 520 N.W.2d 808, 813 (N.D. 1994).

[¶ 16] The district court made numerous findings on the issue of piercing the corporate veil. Some of the findings included:

3. Calima Financial submitted an application to Intercept representing that the contact name and person for the corporation was Santos Hill as Vice President, the company owner was Santos Hill, and that Calima was in the business of providing payday loans in which the average single transaction would be $300.

4. As part of the application process, Santos Hill submitted to Intercept his personal financial statement stating that he had assets worth 6.9 million dollars and liabilities worth 4.2 million dollars.

5. Financial information Santos Hill submitted was false, and Santos Hill knew it was false.

6. Santos Hill submitted to Intercept Articles of Incorporation from the State of Utah. . . .

7. Calima Financial, LLC, never had a physical presence in Utah, and this was a knowingly false representation by Santos Hill.

. . . .

9. Calima Financial was in business from July of 2004 to December of 2004. During this time, Santos Hill was the only owner of Calima Financial. He was also . . . the only one in charge of the day-to-day operations of Calima. . . . From December 21st to December 24th, Santos Hill, individually, acted with fraudulent intent to deceive Intercept in requesting Intercept to transfer $111,500 of funds from Calima's bank account, in which Calima lacked funds to honor the transfer, and transferring the nonexistent funds to Costeno Contracting, Edgar Santo[s] Hill, and Delys St[.] Hill.

10. Of the $111,500 that Santos Hill requested in that three day period from Calima's account, . . . Costeno Contracting received $40,000, Delys St. Hill received $7,500, and Santos Hill received $16,000. The remaining $48,000 of requested transfers were not consummated because improper routing numbers, bank accounts or account names were entered by Santos Hill.

11. The payments made to Costeno Contracting and Delys St. Hill were not payday loans in the ordinary course of Calima Financial's business.

12. Santos Hill obtained the $63,500 for his own benefit.

On the basis of its findings, the court concluded, "[a]llowing Santos Hill to hide behind the limited liability corporation of Calima Financial would justify his wrongful acts and protect him from his own fraudulent acts in this transaction."

[¶ 17] The district court's finding that Santos–Hill obtained the funds for his own benefit is supported by evidence in the record. Intercept submitted evidence showing Costeno Contracting, Inc., and Delys St. Hill were not merely clients of Calima; rather, they were personally associated with Santos–Hill. Costeno was incorporated in the State of Florida in June 2004. The president was Santos–Hill, and the vice-president was St. Hill. The directors of the corporation were Santos–Hill and St. Hill. Intercept also provided evidence showing Santos–Hill and St. Hill shared the same address. Santos–Hill testified in his deposition he purchased his house from St. Hill, and allowed her to continue using the address.

[¶ 18] Intercept produced deeds showing a series of transfers of the real estate on which the house was located. Santos–Hill deeded the property to St. Hill on March 12, 2001. St. Hill transferred the property to Costeno on March 20, 2001. Costeno deeded the property to St. Hill on November 20, 2001. St. Hill deeded the property back to Costeno on November 21, 2001. Santos–Hill signed the St. Hill to Costeno deeds as a witness. Costeno then transferred the land to Santos–Hill on December 20, 2004, one day before the series of returned transactions occurred. The deed was signed by St. Hill as vice president of Costeno.

[¶ 19] The personal financial statement submitted by Santos–Hill indicated he had assets worth $6,925,000 and a net worth of $2,699,400. In his deposition, however, he testified he did not own any of the assets. He testified the assets belonged to Cristina Munoz, the owner of Calima. Santos–Hill testified Calima did not have sufficient funds in its account when he requested the transfers in December 2004. He testified Munoz gave him permission to make the advances, and she would refund the money. The money was never refunded. As noted above, the district court did not find Santos–Hill's testimony regarding Munoz credible. The court's findings have support in the record; therefore, we hold it was not clearly erroneous for the court to pierce the corporate veil of Calima and hold Santos–Hill personally responsible for the $63,500 judgment against Calima.

V

[¶ 20] The district court's judgment is affirmed.

[¶ 21] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.

CROTHERS, Justice, specially concurring.

[¶ 22] I agree the district court had personal jurisdiction over the defendants and that piercing the limited liability company's veil of limited owner liability was not clearly erroneous. I specially concur in the latter holding to emphasize that the Court's discussion at ¶ 15 of this case should not be read to make disregarding an entity's separate legal existence the rule, rather than the exception. My concerns are more fully explained in *Axtmann v. Chillemi*, 2007 ND 179, ¶¶ 28–44.

[¶ 23] Daniel J. Crothers