2014 ND 239

**In the Matter of the GUARDIANSHIP and Conservatorship OF J.G.S.**

**C.C., C.S., J.F.S., and J.S., Petitioners and Appellees**

v.

**J.G.S. and First International Bank and Trust, Respondents**

**J.G.S. Appellant.**

No. 20140017.

Supreme Court of North Dakota.

Dec. 30, 2014.

and the court did not clearly err in finding clear and convincing evidence supported the appointment of a conservator. We affirm.

I

[¶ 2]   J.G.S. is a 90–year–old retired attorney and owned a number of multi-family rental properties.  In 2008, J.G.S. suffered a stroke.  In 2013, the Petitioners in this proceeding, J.G.S.'s four children— C.C., C.S., J.F.S., and J.S., became significantly concerned J.G.S. was no longer able to care for himself or his financial affairs. The Petitioners were specifically concerned that J.G.S. was no longer able to maintain and repair the rental properties, was failing to collect rent from some tenants, and had gifted three multi-family rental properties to a tenant who had managed the properties for him.

[¶ 3]   On August 7, 2013, the Petitioners filed an ex parte petition in the district court for the appointment of a temporary guardian and temporary conservator, seeking an immediate emergency guardianship and conservatorship.  On August 8, 2013, the court appointed a temporary guardian and a temporary conservator.  On August 13, 2013, the Petitioners filed a petition seeking a permanent or indefinite guardianship and conservatorship.  On that same day, J.G.S. was personally served with a notice of the hearing on the petition for appointment of a guardian and conservator, with a copy of the temporary petition attached as an exhibit to the notice. The Petitioners also served J.G.S.'s attorney on August 13 electronically with the petition for a permanent or indefinite guardianship and conservatorship and supporting affidavits, containing similar, but more detailed, allegations than the temporary petition.

[¶ 4]   On August 19, 2013, the district court held a hearing on the temporary

Charlotte J. Skar (argued) and William J. Behrmann (on brief), Fargo, N.D., for petitioners and appellees.

Jonathan T. Garaas, DeMores Office Park, Fargo, N.D., for appellant.

KAPSNER, Justice.

[¶ 1]   J.G.S. appeals from a district court judgment appointing a conservator of his estate.  We conclude the district court had personal jurisdiction over J.G.S.

order, found that an emergency guardianship was not necessary, and vacated the temporary order. The court appointed a visitor and psychologist to evaluate J.G.S. In October 2013, the court held a three-day hearing on the Petitioners' request for a permanent or indefinite guardianship and conservatorship. The court ultimately held that while a guardianship was not necessary, there was clear and convincing evidence of a need for a conservatorship to manage J.G.S.'s financial affairs. The court appointed a conservator for an indefinite period.

## II

[¶ 5] J.G.S. argues the district court lacked personal jurisdiction over him because of a failure of service of process. J.G.S. asserts the Petitioners did not personally serve him with the August 13, 2013, petition seeking permanent or indefinite appointment of a guardian and conservator, or with any of the supporting affidavits, which J.G.S. contends the law requires.

[¶ 6] In the context of a civil action, N.D.R.Civ.P. 3 provides that an action is commenced by the service of a summons, and valid service of process under N.D.R.Civ.P. 4 is required for a court to acquire personal jurisdiction over a defendant. *See Sanderson v. Walsh Cnty.*, 2006 ND 83, ¶ 13, 712 N.W.2d 842; *Gessner v. City of Minot*, 1998 ND 157, ¶ 5, 583 N.W.2d 90. In an action, we have thus explained that a party must "strictly comply with the specific requirements for service of process," and "[a]bsent valid service of process, even actual knowledge of the existence of a lawsuit is insufficient to effectuate personal jurisdiction over a defendant." *Sanderson*, at ¶ 13; *see also Gessner*, at ¶ 5; *Muhammed v. Welch*, 2004 ND 46, ¶ 11, 675 N.W.2d 402. A district court's decision regarding personal jurisdiction is a question of law, fully reviewable on appeal. *Intercept Corp. v.*

*Calima Fin., LLC*, 2007 ND 180, ¶ 10, 741 N.W.2d 209.

[¶ 7] However, N.D.R.Civ.P. 81 provides that special statutory proceedings are specifically excluded from the rules to the extent they are inconsistent or in conflict with procedures and practices provided by the rules. Under N.D.R.Civ.P. 81, Uniform Probate Code proceedings under N.D.C.C. tit. 30.1 are special statutory procedures. *See* N.D.R.Civ.P. 81, Table A; *see also* N.D.C.C. § 30.1–02–04 ("Unless specifically provided to the contrary in this title or unless inconsistent with its provisions, the Rules of Civil Procedure, including the rules concerning vacation of orders and appellate review, govern formal proceedings under this title."). Section 30.1–29–05(1), N.D.C.C., provides the notice required upon filing a petition seeking the appointment of a conservator:

On a petition for appointment of a conservator or other protective order, *the person to be protected* and the spouse of the person to be protected or, if none, the parents of the person to be protected, *must be served personally with notice of the proceeding at least fourteen days before the date of hearing if they can be found within the state*, or, if they cannot be found within the state, they, any other guardian or conservator, and any government agency paying benefits to the person sought to be protected, if the person seeking the appointment has knowledge of the existence of these benefits, must be given notice in accordance with section 30.1–03–01. *Waiver by the person to be protected is not effective unless* the proceedings are limited to payment of veterans' administration benefits, *the person to be protected attends the hearing*, or, unless minority is the reason for the proceeding, waiver is

confirmed in an interview with the visitor.

(Emphasis added.)

[¶ 8] Here, the Petitioners filed the petition for appointment of a permanent guardian and conservator on August 13, and a copy of the petition, with accompanying affidavits, was served electronically upon J.G.S.'s attorney. In addition, a notice of hearing, advising J.G.S. that the hearing on the petition would be held on October 2, 2013, was personally served by a sheriff's deputy upon J.G.S. on August 13. Attached to the notice of hearing served upon J.G.S. was a copy of the original petition seeking a temporary guardian and conservator.

[¶ 9] Although J.G.S. contends that the failure to personally serve a copy of the second petition upon him constituted a failure of service of process and left the district court without personal jurisdiction, N.D.C.C. § 30.1–29–05(1) does not specify that a copy of the petition must be served upon the person to be protected. Instead, N.D.C.C. § 30.1–29–05(1) provides that "[o]n a petition for appointment of a conservator or other protective order, the person to be protected ... must be served personally with notice of the proceeding at least fourteen days before the date of hearing." Thus, the statute requires only that the person to be protected receive "notice of the proceeding."

[¶ 10] In this case, J.G.S. was personally served with a notice of hearing advising him of the date and time of the hearing on the petition, and was provided a copy of the temporary petition, which would have placed him on notice of the relevant issues in the proceeding. On this record, we conclude the Petitioners adequately complied with N.D.C.C. § 30.1–29–05 and provided sufficient "notice of the proceeding" to J.G.S. We, therefore, conclude the district court had personal jurisdiction over J.G.S.

III

[¶ 11] J.G.S. argues the district court erred in appointing a conservator because the court previously found J.G.S. as competent and there was not convincing evidence that a conservatorship was warranted.

[¶ 12] Chapter 30.1–29, N.D.C.C, part of this State's enactment of the Uniform Probate Code, governs the appointment and operation of a conservatorship and is designed to protect the property of a person who is under disability and is unable to maintain his or her property. *See Estate of Allmaras,* 2007 ND 130, ¶ 16, 737 N.W.2d 612; *Conservatorship of Kinney,* 495 N.W.2d 69, 70–71 (N.D.1993); *Matter of Bo,* 365 N.W.2d 847, 850–51 (N.D.1985). Section 30.1–29–01(2), N.D.C.C., provides the circumstances under which the district court may appoint a conservator:

> Appointment of a conservator or other protective order may be made in relation to the estate and affairs of a person if the court determines that:
>
> a. The person is unable to manage the person's property and affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, advanced age, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance.
>
> b. The person has property which will be wasted or dissipated unless proper management is provided, or that funds are needed for the support, care, and welfare of the person or those entitled to be supported by the person and that protection is necessary or desirable to obtain or provide funds.

*See also* N.D.C.C. § 30.1–26–01(4) ("A 'protected person' is a ... person for whom a conservator or limited conservator

has been appointed or other protective order has been made."); N.D.C.C. § 30.1–26–01(5) ("A 'protective proceeding' is a proceeding under [N.D.C.C. § 30.1–29–01] to determine that a person cannot effectively manage or apply the person's estate to necessary ends, either because the person lacks the ability or is otherwise inconvenienced, ... and to secure administration of the person's estate by a conservator or other appropriate relief.").

[¶ 13] While a conservator may be appointed to manage a person's property who is "under disability," a guardian is appointed for a person found to be "incapacitated" and "unable to attend to affairs concerning his person." *Matter of Bo*, 365 N.W.2d at 851. As this Court discussed in *Estate of Gleeson*, 2002 ND 211, 655 N.W.2d 69, the statutory procedures for appointing a guardian and a conservator are very different, and "the bar for appointment of a guardian is higher than that for appointment of a conservator." *Id.* at ¶ 14. While the guardianship statutes require a proposed ward be found to be "incapacitated" by clear and convincing evidence, the conservatorship statutes simply require a district court to appoint a conservator after a basis for the appointment "has been established." *Gleeson*, at ¶ 15 (comparing N.D.C.C. § 30.1–28–04(2)(b) with N.D.C.C. § 30.1–29–07(3)); *cf. Guardianship/Conservatorship of Van Sickle*, 2005 ND 69, ¶ 26, 694 N.W.2d 212 ("This allocation of the burden of proof [by clear and convincing evidence] is in accord with the current trend of courts and legislatures to enhance the protections available to persons alleged to be incapable of caring for themselves or their property.").

[¶ 14] The district court noted that in contrast to the guardianship statute, the conservatorship statute does not impose a clear and convincing burden of proof, but nonetheless found that clear and convincing evidence demonstrated J.G.S. is under disability and in need of a conservatorship. This Court on appeal applies the clearly erroneous standard of review under N.D.R.Civ.P. 52(a) to a district court's findings of fact that a conservatorship is needed. *See Conservatorship of T.K.*, 2009 ND 195, ¶ 10, 775 N.W.2d 496; *Guardianship and Conservatorship of Thomas*, 2006 ND 219, ¶ 7, 723 N.W.2d 384. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *T.K.*, at ¶ 10; *Thomas*, at ¶ 7.

[¶ 15] Here, the district court found Petitioners had established the basis for appointing a conservator under N.D.C.C. § 30.1–29–07(3). The court found J.G.S. is frail and unable to fully care for himself or his property, is unable to drive, and has failed to adequately hire and supervise others to care for his rental properties. The court also found several of J.G.S.'s properties are in a state of disrepair and others were not adequately insured. The court accepted the testimony of the neuropsychologist that J.G.S. is capable of making decisions, although not necessarily the best choices.

[¶ 16] Although J.G.S. argued during the hearing that he had adequately provided for his family by way of previous gifts, the district court was concerned J.G.S. would continue to gift property or allow assets to dissipate by neglecting to adequately maintain them if a conservatorship was not established. The court found the Petitioners had attempted to assist J.G.S. manage his affairs, but J.G.S. objected to their attempted assistance, and some of their actions have resulted in other pending litigation. The court found it was necessary and desirable for a conservator to continue acting to protect J.G.S.'s property.

[¶ 17]   On the basis of our review of the record, we believe there is sufficient evidence to support the district court's finding that a conservatorship is necessary. There was testimony at the hearing that J.G.S. had become increasingly unable to handle his own affairs as his capacity and abilities had declined.   J.S. testified J.G.S.'s cognition and reasoning were not what they had been, which he had observed after residing with J.G.S. after J.G.S.'s stroke.   J.S. testified that J.G.S. had made flawed management decisions including flawed procedures for screening tenants and that J.G.S.'s understanding of certain business processes had changed and diminished since his stroke.

[¶ 18]   C.C. testified J.G.S. had become "penny wise and pound foolish."   C.C., who had assisted J.G.S. in bookkeeping, testified J.G.S. had been incorrectly characterizing expenses.   J.G.S. also refused to hire various services to help himself, believing that it was too costly for things like taxis or home care.   C.C. testified that J.G.S.'s judgment on business decisions had declined and he needed the assistance on larger decisions.   C.S. also testified that in initial conversations after his stroke, J.G.S. would be fine, but after a while could not retain new information and his ability to reason and follow ideas had been impaired.   C.S. testified that J.G.S. had lost his ability to be a manager like he had been, partly because of his decreased mobility, and the loss of his driver's license limited his ability to visit his properties. J.G.S.'s own testimony showed that his abilities had diminished after his stroke and that he relied on tenant managers to care for his rental properties.   The neuropsychologist also testified that J.G.S.'s mild cognitive impairment might affect his ability to run apartment buildings, that J.G.S. would continue to decline in the future, and recommended J.G.S. receive additional services for his personal care.

[¶ 19]   There is also testimony in the record that the multi-family rental properties owned by J.G.S. are in decline.   J.G.S. testified that he was unaware before these proceedings that the properties were going "downhill" because it was not brought to his attention.   There is evidence in the record that rents were not being collected. J.F.S. testified there were tenants occupying units with no rent being received, and C.C. had reviewed deposit slips, rent checks, and money orders received by J.G.S. and discovered a "cluster" of tenants whose addresses could not be determined.   C.C. testified that the money that was supposed to have been collected from various tenants was gone and that J.G.S. did not know what had happened to it. J.G.S. himself testified that many tenants did not pay rent, and he did not believe it was worth trying to collect the rent.

[¶ 20]   There was testimony that before his stroke, J.G.S. had himself done most of the property management, including repairs, maintenance, tenant screening, and setting rents.   J.S. testified that the buildings are now in decline and that J.G.S.'s ability to screen tenants had changed, resulting in a lawsuit over an infraction of the screening process.   J.S. testified the properties were in far worse repair than they had ever been and that J.G.S. told J.S. this was because he had not been to the buildings himself or followed up with his tenant managers.   J.G.S. testified that he had hired people to manage his property since his stroke.   There is also evidence J.G.S. made uncharacteristic gifts that showed a likelihood to dissipate assets when he transferred three of the properties to a tenant manager.

[¶ 21]   On this record, we conclude the district court's findings that J.G.S. was in need of a conservator to manage his finances was not clearly erroneous.   The evidence in the record showed that J.G.S. owned numerous multiple-family rental

properties but was no longer able to effectively manage those properties, and they were suffering waste and dissipation. The evidence demonstrated many of the properties were in need of substantial repairs; that J.G.S. had not been collecting rent on certain properties; that he had failed to hire capable managers to oversee the property and was allowing tenants to act as managers without any training or supervision; that J.G.S. was not insuring the properties; and that J.G.S. had gifted three multiple-family rental properties to a tenant. The evidence also showed J.G.S. may not have been not aware of the value of some of his properties, believing the three buildings he gifted away were worth less than the value at which they were appraised and assessed.

[¶ 22] The district court decides credibility issues in a bench trial, which this Court does not "second-guess on appeal." *T.K.*, at ¶ 13. This Court will not reweigh evidence, reassess credibility, or reexamine findings of fact made on conflicting evidence. *Id.* "We give due regard to the trial court's opportunity to assess the credibility of the witnesses, and

the court's choice between two permissible views of the evidence is not clearly erroneous." *Id.* (quotation marks omitted). We are not left with a definite and firm conviction the district court made a mistake in finding J.G.S. needed a conservator, and we conclude the district court's finding that J.G.S. was in need of a conservatorship is not clearly erroneous.

IV

[¶ 23] We have considered J.G.S.'s remaining arguments and consider them to be either unnecessary to our decision or without merit. The district court judgment is affirmed.

[¶ 24] GERALD W. VANDE WALLE, C.J., BENNY A. GRAFF, S.J., DALE V. SANDSTROM and DANIEL J. CROTHERS, JJ., concur.

[¶ 25] The Honorable BENNY A. GRAFF, S.J., sitting in place of McEVERS, J., disqualified.