# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

---

## 2024 ND 202

---

| | |
|---|---|
| Mitchell S. Sanderson, | Plaintiff and Appellant |
| v. | |
| Janne Myrdal, | Defendant and Appellee |
| and | |
| The State of North Dakota, | Intervenor and Appellee |

---

## No. 20240091

---

Appeal from the District Court of Walsh County, Northeast Judicial District, the Honorable Kari M. Agotness, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Mitchell S. Sanderson, self-represented, Park River, N.D., plaintiff and appellant.

Howard D. Swanson, Grand Forks, N.D., for defendant and appellee.

Courtney R. Titus, Assistant Attorney General, Bismarck, N.D., for intervenor and appellee.

**Sanderson v. Myrdal et al.**
**No. 20240091**

**Tufte, Justice.**

[¶1]   Mitchell Sanderson appeals from a district court judgment dismissing his complaint with prejudice and from an order denying relief from judgment. On appeal, Sanderson argues that the district court erred in granting summary judgment in favor of Myrdal and dismissing his complaint with prejudice. Sanderson also argues that the district court abused its discretion in (1) denying his various motions; (2) denying his requests for hearings on those motions; and (3) awarding Myrdal attorney's fees. We affirm.

I

[¶2]   On May 1, 2023, Sanderson brought an action against North Dakota state senator Janne Myrdal under 42 U.S.C. § 1983, alleging that Myrdal had violated his First Amendment rights when she blocked him on Facebook. Sanderson argued that Myrdal's Facebook page constituted a public forum and that he had a First Amendment right to see her posts and comment on them. Sanderson sought compensatory and punitive damages as well as injunctive relief enabling him to see, share, and comment on Myrdal's Facebook posts.

[¶3]   On June 12, Myrdal filed and served her answer, denying that Sanderson was entitled to relief and alleging that her Facebook page was not an official State website. Four days later, Sanderson filed a motion for default judgment pursuant to N.D.R.Civ.P. 55(a), asserting that Myrdal had failed to answer within twenty-one days of being served with the summons and complaint. Myrdal responded that Sanderson was not entitled to default judgment because he had been served with her answer before he moved for default judgment. In an affidavit filed with the motion, Myrdal stated that Sanderson served her with the summons and complaint by mail on May 2, 2023, but she was out of state and did not become aware of the suit until late May when she received notification and assignment of its case number. Immediately thereafter, she contacted the county clerk and her attorney. The district court denied Sanderson's motion for default judgment.

1

The State of North Dakota moved to intervene and the district court granted intervention as a matter of right.

[¶4] Sanderson filed numerous motions seeking rulings on his allegations relating to evidence tampering and spoilage, forgery, First and Fourteenth Amendment violations, qualified immunity, obstruction, and public forum and color of law. The district court denied each of Sanderson's requests for a hearing because he failed to either timely request or schedule a hearing. The district court found three of Sanderson's motions frivolous (evidence tampering and spoilage, obstruction, and forgery) and awarded Myrdal attorney's fees for having to respond to them. The district court construed the other three motions as motions for summary judgment and denied them in its order granting summary judgment in favor of Myrdal.

[¶5] The district court concluded that Sanderson had raised no genuine issue of material fact and that the § 1983 claim failed as a matter of law. Because its order granting summary judgment in favor of Myrdal resolved all pending claims, the district court dismissed the State's motion for declaratory judgment as moot. The district court then dismissed Sanderson's complaint with prejudice.

II

[¶6] We first address Sanderson's challenge to the judgment on jurisdictional grounds. Sanderson argues the district court lacked personal jurisdiction over Myrdal due to Sanderson's insufficient service of process on Myrdal. The district court rejected this argument in its denial of Sanderson's motion for relief from judgment. The district court's ruling regarding personal jurisdiction is a question of law that we review de novo. *Wilkens v. Westby*, 2019 ND 186, ¶ 4, 931 N.W.2d 229.

[¶7] A district court "may acquire personal jurisdiction over any person through service of process as provided in this rule or by statute, or by voluntary general appearance in an action by any person either personally or through an attorney or any other authorized person." N.D.R.Civ.P. 4(b)(4). Sanderson alleged in his complaint that the district court had personal jurisdiction over him and Myrdal; Myrdal admitted to personal jurisdiction over both parties in her

answer. Although initial service of process on Myrdal was improper, under N.D.R.Civ.P. 12(h)(1), any "lack-of-personal-jurisdiction defense is waived if it is neither made by motion nor included in a responsive pleading." *Intercept Corp. v. Calima Financial, LLC*, 2007 ND 180, ¶ 10, 741 N.W.2d 209.

[¶8]   A plaintiff who commences an action alleging a district court has personal jurisdiction over a defendant cannot later challenge that court's personal jurisdiction over the defendant. Here, Sanderson chose to initiate his action against Myrdal in district court. The court acquired personal jurisdiction over Myrdal under N.D.R.Civ.P. 4(b)(4) when she answered the complaint, admitting the jurisdictional allegations in the complaint about both parties and submitting herself to the court's jurisdiction. *United Accounts, Inc. v. Lantz*, 145 N.W.2d 488, 491 (N.D. 1966) ("The service of an answer . . . constitutes a general appearance when such answer . . . does not object to the jurisdiction of the court."). Sanderson cites decisions holding a *defendant* may defeat personal jurisdiction for lack of personal service *on the defendant*. We are aware of no authority for the proposition that a plaintiff may challenge the court's jurisdiction over a defendant who admits personal jurisdiction on the basis of defects in the plaintiff's service of process on the defendant. Sanderson's jurisdiction argument is without merit.

### III

[¶9]   Sanderson argues that the district court erred in denying his motion for default judgment.

[¶10] We review a district court's denial of a motion for default judgment for an abuse of discretion. *Suburban Sales and Service, Inc. v. District Court of Ramsey Cnty.*, 290 N.W.2d 247, 251 (N.D. 1980). The court abuses its discretion when it "acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law." *State v. $33,000 U.S. Currency*, 2008 ND 96, ¶ 6, 748 N.W.2d 420.

[¶11] On May 2, 2023, Sanderson attempted service of the summons and complaint on Myrdal by mail. Myrdal was out of state at that time, and someone else at her residence signed Myrdal's name on the return receipt. Myrdal first

became aware of the suit in late May when she received notification and assignment of its case number. Immediately thereafter, she contacted the county clerk and her attorney. On June 12, 2023, Myrdal filed and served her answer. Four days later, Sanderson filed a motion for default judgment pursuant to N.D.R.Civ.P. 55(a), asserting that Myrdal had failed to answer within twenty-one days of being served with the summons and complaint.

[¶12] Under Rule 55(a), a district court has discretion to direct entry of default judgment. Here, the district court noted that Sanderson moved for entry of default judgment after receiving Myrdal's answer, and that under our precedent, a plaintiff is generally not entitled to default judgment when the plaintiff moves for default judgment after being served the defendant's answer. *See United Accounts, Inc.*, 145 N.W.2d at 491 ("The service of an answer to a complaint invokes the authority of the court to determine a controversy on its merits . . . ."). The district court also noted "North Dakota's strong preference that cases be decided on their merits." *See Filler v. Bragg*, 1997 ND 24, ¶ 14, 559 N.W.2d 225. The district court did not abuse its discretion in denying Sanderson's motion for default judgment.

IV

[¶13] Sanderson argues that the district court erred in granting summary judgment in favor of Myrdal.

[¶14] Summary judgment allows for the prompt resolution of a controversy on the merits without trial when there are no disputed issues of material fact or disputed inferences to be drawn from undisputed facts. *Lupo v. McNeeley*, 2019 ND 104, ¶ 4, 925 N.W.2d 457.

> The party moving for summary judgment has the burden of establishing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. In deciding whether the district court appropriately granted summary judgment, this Court views the evidence in the light most favorable to the party opposing the motion, and the opposing party will be given the benefit of all favorable inferences that can reasonably be drawn from the record. On appeal, we decide whether the

4

information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether a district court properly granted summary judgment is a question of law this Court reviews de novo on the entire record.

*Id*.

A

[¶15] The district court properly concluded that there were no genuine issues of material fact. In support of her motion for summary judgment, Myrdal filed an unsworn declaration stating facts that are consistent with Sanderson's statement of facts in his affidavit in support of his complaint. Sanderson never claimed existence of a genuine issue of fact, neither in his appellate brief nor his district court filings.

[¶16] The undisputed facts show that Myrdal is a North Dakota state senator who created her "Myrdal ND Senate" Facebook page in December 2015 to promote her political interests and candidacy for the North Dakota Senate. Since then, Myrdal has used the Facebook page to communicate with her constituents. Myrdal has described herself on her Facebook page as a "North Dakota District 10 Senator," using the labels "Political Candidate" and, alternatively, "Public Figure." Since her election to the North Dakota Senate, Myrdal has used her Facebook page to promote her reelection efforts and share local events, religious beliefs, and political views.

[¶17] Myrdal maintains sole control of the Facebook page and the State is not involved in the administration of the page. Myrdal's Facebook page is not required by any State law; is not held out as an official communication from the State or North Dakota Senate; is not funded in any way by the State or public funds; is not subject to State management or control; nor is it part of Myrdal's official duties as a state senator. Although Myrdal listed her nd.gov email address on the Facebook page, she uses her personal phone number rather than a State-issued number. In its motion for declaratory judgment, the State confirmed it is not involved in any way with the administration of Myrdal's Facebook page.

5

B

[¶18] The district court properly concluded that Sanderson's § 1983 claim fails as a matter of law. The undisputed facts fit squarely within controlling caselaw dictating that Myrdal's Facebook page is not a public forum and that her blocking Sanderson from her page is not state action.

[¶19] "Section 1983 provides a cause of action against '[e]very person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State*' deprives someone of a federal constitutional or statutory right. As its text makes clear, this provision protects against acts attributable to a State, not those of a private person. This limit tracks that of the Fourteenth Amendment, which obligates *States* to honor the constitutional rights that § 1983 protects." *Lindke v. Freed*, 601 U.S. 187, 194 (2024) (quoting 42 U.S.C. § 1983) (emphasis in original).

[¶20] The Court held in *Lindke* that "a public official's social-media activity constitutes state action under § 1983 only if the official (1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when he spoke on social media." *Id.* at 198. "The first prong of this test is grounded in the bedrock requirement that 'the conduct allegedly causing the deprivation of a federal right be *fairly attributable to the State.*' An act is not attributable to a State unless it is traceable to the State's power or authority. Private action—no matter how 'official' it looks—lacks the necessary lineage." *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). To succeed on a § 1983 claim, the plaintiff must show that the state official had "actual authority rooted in written law or longstanding custom to speak for the State. That authority must extend to speech of the sort that caused the alleged rights deprivation. If the plaintiff cannot make this threshold showing of authority, he cannot establish state action." *Id.* at 201. Even if a plaintiff can show the state official did have actual authority to speak for the state, his claim will still fail unless he can show, under the second prong, that the state official purported to use that actual authority to deprive the plaintiff of a federal right. *Id.*

[¶21] *Lindke* was decided after the district court issued its order granting summary judgment in favor of Myrdal. The district court relied on the Eighth

6

Circuit's decision in *Campbell v. Reisch*, 986 F.3d 822 (8th Cir. 2021). The court held in *Campbell* that a public official did not engage in state action when she blocked the plaintiff on Twitter, because the official had created her Twitter account as a campaign tool prior to being elected and continued to use it "overwhelmingly for campaign purposes" after her election. 986 F.3d at 826. The court explained that "[a] private account can turn into a governmental one if it becomes an organ of official business, but that is not what happened here." *Id.*

[¶22] The district court's analysis is consistent with *Lindke.* The court concluded that "Myrdal's blocking of Sanderson from her Facebook account was not state action. Here, a public official has denied access to private property over which the government lacks ownership or control." The court noted that Myrdal created her Facebook page as a campaign tool prior to her election to the North Dakota Senate and that she continued to use the page for her ongoing reelection efforts. Myrdal created the page in her private capacity, she has always had exclusive control over the page, and she would continue to have exclusive control over the page even if she were no longer a state senator. Quoting *West v. Atkins*, 487 U.S. 42, 49 (1988), the court explained that Myrdal's "power to operate her personal social media account was neither a 'power possessed by virtue of state law,' nor one that was 'made possible only because [Myrdal was] clothed by the authority of state law.'" The court concluded that Myrdal's blocking of Sanderson cannot be construed as state action, because Myrdal acted in her private capacity when she did so; Myrdal has no authority to act on behalf of the State in the administration of her Facebook page.

[¶23] To avoid summary judgment on his § 1983 claim, Sanderson was required to raise a fact issue that Myrdal deprived him of a federal right while acting under color of state law. The undisputed facts do not leave unresolved any dispute that Myrdal "(1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when [she] spoke on social media." *Lindke*, 601 U.S. at 198. As both the State and Myrdal have stated, Myrdal does not possess actual authority to speak on the State's behalf. Sanderson does not dispute these essential facts, and thus his claim fails as a matter of law.

## V

[¶24] Sanderson argues that the district court erred in denying his requests for hearings on his motions. We review such denials for an abuse of discretion. *Hoffman v. Jevne*, 2019 ND 156, ¶ 8, 930 N.W.2d 95.

[¶25] Rule 3.2(a) provides:

> If any party who has timely served and filed a brief requests a hearing, the request must be granted. A timely request for a hearing must be granted even if the moving party has previously served notice indicating that the motion is to be decided on briefs. The party requesting a hearing must secure a time for the hearing and serve notice upon all other parties. Requests for a hearing or the taking of evidence must be made not later than seven days after expiration of the time for filing the answer brief. If the party requesting a hearing fails within 14 days of the request to secure a time for the hearing, the request is waived and the matter is considered submitted for decision on the briefs. If an evidentiary hearing is requested in a civil action, notice must be served at least 21 days before the time specified for the hearing.

N.D.R.Ct. 3.2(a)(3). "A Rule 3.2 request for oral argument must be granted to any requesting party . . . who has timely served and filed a brief. Rule 3.2, however, requires that the party requesting oral argument must secure a time for the argument and serve notice upon all other parties. . . . Failure to secure a time for oral argument renders the request incomplete." *In re Adoption of J.S.P.L*, 532 N.W.2d 653, 657 (N.D. 1995) (cleaned up).

[¶26] The record shows Sanderson either filed his requests after the seven-day deadline or failed to schedule hearings within the required 14-day period. The district court therefore properly denied the requests under Rule 3.2(a).

## VI

[¶27] Sanderson argues that the district court erred in awarding Myrdal attorney's fees. We review an award of attorney's fees for an abuse of discretion. *Sagebrush Res., LLC v. Peterson*, 2014 ND 3, ¶ 15, 841 N.W.2d 705 ("A court's

discretionary determinations under N.D.C.C. § 28-26-01(2) will not be overturned on appeal absent an abuse of discretion.").

[¶28] Section 28-26-01(2), N.D.C.C., provides:

> In civil actions the court shall, upon a finding that a claim for relief was frivolous, award reasonable actual and statutory costs, including reasonable attorney's fees to the prevailing party. Such costs must be awarded regardless of the good faith of the attorney or party making the claim for relief if there is such a complete absence of actual facts or law that a reasonable person could not have thought a court would render judgment in that person's favor, providing the prevailing party has in responsive pleading alleged the frivolous nature of the claim.

A district court has discretion under N.D.C.C. § 28-26-01(2) to determine whether a claim is frivolous and how much to award. *McCarvel v. Perhus*, 2020 ND 267, ¶ 19, 952 N.W.2d 86. "Frivolous claims are those which have such a complete absence of actual facts or law that a reasonable person could not have expected that a court would render judgment in that person's favor." *Sagebrush*, 2014 ND 3, ¶ 15 (cleaned up). The district court must award costs and attorney's fees if it finds the claim is frivolous. *McCarvel*, 2020 ND 267, ¶ 19.

[¶29] The district court found three of Sanderson's motions frivolous and awarded Myrdal attorney's fees under N.D.C.C. § 28-26-01(2) for responding to them. Our review of the record shows that the district court did not abuse its discretion in finding Sanderson's motions frivolous and awarding attorney's fees. The district court addressed each provision of law that Sanderson cited, explaining why the provisions were inapplicable to the claims at issue. All legal authority Sanderson cited was irrelevant to the claims at issue. As the district court correctly pointed out—even if the laws Sanderson cited were applicable to the claims—he failed to allege facts sufficient to bring any claim under those laws.

## VII

[¶30] All other issues raised by Sanderson are inadequately briefed, without merit, or unnecessary to our decision. We affirm.

[¶31] Jon J. Jensen, C.J.
 Daniel J. Crothers
 Lisa Fair McEvers
 Jerod E. Tufte
 Douglas A. Bahr